**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**
Orlando Division

Case No.: _____

WYNDHAM VACATION OWNERSHIP, INC. a Delaware corporation; WYNDHAM VACATION RESORTS, INC., a Delaware corporation, WYNDHAM RESORT DEVELOPMENT CORPORATION; a Oregon Corporation; SHELL VACATIONS, LLC, an Arizona limited liability company; SVC-AMERICANA, LLC, an Arizona limited liability company; and SVC-HAWAII, LLC, a Hawaii limited liability company,

 Plaintiffs,

v.

SLATTERY, SOBEL & DECAMP, LLP, a California limited liability partnership; DEL MAR LAW GROUP, LLP, a California limited liability partnership; CARLSBAD LAW GROUP, LLP, a California limited liability partnership; JL 'SEAN' SLATTERY, an individual and resident of the State of California; and DOES #1-10,

 Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

  Plaintiffs Wyndham Vacation Ownership, Inc. ("WVO"); Wyndham Vacation Resorts, Inc. ("WVR"); Wyndham Resort Development Corporation ("WRDC"); Shell Vacations, LLC ("SV"); SVC-Americana, LLC ("SVC-Americana"); and SVC-Hawaii, LLC ("SVC-Hawaii") (collectively, "Wyndham"), through counsel and pursuant to the Federal Rules of Civil Procedure, hereby sue Defendants Slattery, Sobel & DeCamp, LLP ("SSD"), Del Mar Law Group, LLP ("Del Mar"), Carlsbad Law Group, LLP ("Carlsbad"), JL 'Sean' Slattery ("Slattery"), and DOES #1-10, and state as follows:

1

**I.      INTRODUCTION**

1. This action is based on the simple premise that it is inherently false and misleading for a non-party to a contract to promise and sell the ability to release one of the parties to that contract from the obligations of that contract, or to otherwise legally cancel or terminate that contract without any consequences.

**A.     Background on the Timeshare Industry.**

2. Timeshare Resort developers, like Wyndham, develop vacation properties where the developer can divide a single vacation unit between 52 owners, with each owner purchasing a fractional interest of the whole for a specified share of the total price, i.e. deeded ownership. Developers, like Wyndham, also sell membership interests to consumers in the form of points, which are exchanged for use at Wyndham properties. Wyndham owners may also belong to an exchange program, which allows owners to use their ownership at Wyndham resorts to stay at additional properties that Wyndham does not own, further expanding consumer's choices.

3. Timeshare ownership is a contractual relationship. Wyndham has valid and binding contracts (the "Timeshare Contracts") with identifiable individuals who purchased timeshare interests from Wyndham (the "Wyndham Owners"). The Timeshare Contracts control the benefits and obligations of timeshare ownership between the Wyndham Owners and Wyndham.

**B.     General Background on the Timeshare Exit Industry.**

4. Recently, a nefarious cottage industry known as "timeshare exit" has sprouted. This industry preys upon unsuspecting timeshare owners, including Wyndham Owners, inducing them into breaching their valid and binding Timeshare Contracts, causing harm to both the

Wyndham Owners and Wyndham. This scheme is not limited to just Wyndham Owners and has targeted the timeshare industry as a whole.

5. Timeshare exit businesses typically demand exorbitant up-front payment from consumers, and then do little or nothing on behalf of the consumer, often leaving the consumer with damaged or ruined credit. To make matters worse, many consumers that may have an issue with their timeshare product could have the issue resolved by simply contacting the timeshare developer, such as Wyndham, directly or utilizing one of the many programs created by the timeshare industry for consumers, such as the Wyndham Ovation® program.

6. Timeshare exit scams are usually organized in one of a few different manners. One of the common organizational structures is two groups working together: the marketing group and the lawyer group. The marketing group engages in advertising and promotional activities, attempting to obtain new customers, including Wyndham Owners, and lure them into the scheme. The lawyer group exists to lend a false air of legitimacy to the scheme and to effectively block communication between Wyndham and the Wyndham Owners, so the Wyndham Owners are prevented from learning the reality of what is happening to them.

7. Most state bars have rules prohibiting certain kinds of attorney advertising, such as guaranteeing results and offering a "100% money back" guarantee.

8. However, if the 'services' that are being offered were truthfully advertised – that is, that there is no guarantee of success and that a Wyndham Owner may have their timeshare interested foreclosed upon and that such a foreclosure would count as an 'exit' and not entitle the Wyndham Owner to the "100% money back" guarantee – no reasonable consumer would retain the 'services' being offered. Thus, the lawyer group needs a marketing arm in order to attempt to circumvent legal restrictions on lawyer advertising.

3

9. Additionally, the co-conspirators require a lawyer or group of lawyers to fully effectuate the scheme. Amongst other roles, the lawyer group lends a false air of legitimacy to the overall scheme by allowing the marketing group to advertise that they work with attorneys, making the operation appear legitimate. Additionally, the lawyer group is utilized to send 'demand letters' to Wyndham and claim that the Wyndham Owners are represented by counsel, thereby preventing Wyndham from having direct communication or contact with its owners and permitting the timeshare exit company to fully control the messaging provided to the Wyndham Owners.

10. The arrangement described hereinabove is zealously guarded by the participants in the scheme to prevent timeshare developers, like Wyndham, from uncovering the scheme. In one recent case, the owner of one of the marketing groups of a timeshare exit scheme admitted under oath in testimony before a federal district court that he had altered documents to prevent the timeshare developer from discovering the identities of the companies he worked with.

11. However, there is a telltale sign that gives away the scheme: a small, generally unknown law firm from a relatively remote geographic location from Wyndham (compared to Wyndham's headquarters in Orlando, Florida) suddenly begins sending numerous demand letters to Wyndham, allegedly on behalf of Wyndham Owners scattered across the country. Generally, these law firms have little to no prior experience representing consumers in timeshare matters, little to no obvious advertising (or other method by which they would attain clients from across the country), and no Florida-admitted lawyers (which are necessary to litigate claims against Florida-based Wyndham).

12. In other words, a small, unknown California-based law firm with little-to-no online presence or other advertising and no Florida-admitted lawyers might suddenly start

sending dozens of demand letters to Wyndham, allegedly on behalf of Wyndham Owners located from states as diverse as New York, Maine, Minnesota, and Washington, all of whom are hundreds, if not thousands, of miles away from the law firm.  Such behavior is a telltale sign that said law firm is really part of a timeshare exit scam.

13. Unfortunately for the Wyndham Owners, the "services" such timeshare exit companies sell and/or provide typically result in an outcome very different than what is promised.

14. Upon being retained, the timeshare exit company instructs, deceives, induces, or persuades Wyndham Owners to stop fulfilling their contractual obligations under the Timeshare Contracts, as a means of facilitating the "exit", "cancellation", or "transfer."  Even if they state otherwise in writing, the timeshare exit company instructs, deceives, induces, or persuades Wyndham Owners to stop making payments under the Timeshare Contracts.  There are three purposes to doing this:

   a. it helps justify the fees charged by claiming that the Wyndham Owner is saving money by not making payments to Wyndham as required by the Timeshare Contracts;

   b. related to paragraph 14(a), *supra*, it diverts the funds of the Timeshare Owners from Wyndham to the timeshare exit company, causing Wyndham damages; and

   c. it ensures a Wyndham Owner will go into default, and foreclosure, on their Timeshare Contract, allowing the timeshare exit company to claim success at "exiting" a Wyndham Owner from their Timeshare Contract, a false and misleading characterization which harms the Wyndham Owner.

15. It is not disclosed to the Wyndham Owners the consequences of ceasing payments, or that their "cancellation" and "exit" will result in an unlawful breach of the Timeshare Contracts due to non-payment, leading to a non-judicial foreclosure of their timeshare interests.

16. Nevertheless, after the Timeshare Contracts are foreclosed, the timeshare exit company then misrepresents to these former Wyndham Owners that they were successful in "cancelling" or "exiting" their Timeshare Contracts.

17. Alternatively, a surrender or deed-in-lieu may be negotiated on behalf of Wyndham Owners, while failing to inform the Wyndham Owners that doing so also has substantial negative impacts on the credit and finances of Wyndham Owners.

18. Cancellation or rescission of a contract is very different in nature than a breach and termination. But Defendants advertise the former only to mislead Wyndham Owners into the latter.

19. Under the Florida Statutes, the "cancellation" of a Timeshare Contract is a specific, non-waivable rescission right held by Wyndham Owners that can be exercised within a certain time period following the execution of a Timeshare Contract. *See* Fla. Stat. § 721.10. It is not a service that can be advertised, sold, or provided in commerce.

## II.   PARTIES, JURISDICTION, AND VENUE

### A.   The Plaintiffs

18. Plaintiff Wyndham Vacation Ownership, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

19. Plaintiff Wyndham Vacation Resorts, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

20. Plaintiff Wyndham Resort Development Corporation is a corporation organized and existing under the laws of the State of Oregon with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

21. Plaintiff Shell Vacations LLC is a limited liability company organized and existing under the laws of the state of Arizona with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

22. Plaintiff SVC-Americana, LLC is a limited liability company organized and existing under the laws of the state of Arizona with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

23. Plaintiff SVC-Hawaii, LLC is a limited liability company organized and existing under the laws of the state of Hawaii with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

**B.     The Defendants**

24. Slattery, Sobel & Decamp, LLP is a limited liability partnership organized and existing under the laws of the State of California with a principal address at 12250 El Camino Real, Suite 120, San Diego, California 92130.

25. Del Mar Law Group, LLP is a limited liability partnership organized and existing under the laws of the State of California with a principal address at 12250 El Camino Real, Suite 120, San Diego, California 92130, the same address as SSD.

26. Carlsbad Law Group, LLP is a limited liability partnership organized and existing under the laws of the State of California with a principal address at 5050 Avenida Encinas, Suite 300, Carlsbad, California 92008.

27. JL 'Sean' Slattery is an individual, citizen of the State of California and a member of the California Bar. Slattery lists himself as the 'managing partner' of Carlsbad, the 'managing partner' of SSD, and the 'founding partner' or 'founding member' of Del Mar.

28. Does #1-10 are unknown person(s) and/or entity(ies) that act in concert with the other defendants named herein to carry out the schemes set forth herein. The identity(ies) of Does #1-10 are being concealed by themselves and/or the other defendants named herein and the identity(ies) of Does #1-10 cannot be readily ascertained by Wyndham at this time. Once the true identity(ies) of Does #1-10 are ascertained through discovery in this matter, Wyndham will amend this Complaint to include their identity(ies).

    C.    <u>**Subject Matter Jurisdiction**</u>

29. This Court has subject matter jurisdiction over the claims brought herein pursuant to the Court's diversity jurisdiction, 28 U.S.C. § 1332 as there is complete diversity between the Plaintiffs and the Defendants and the amount in controversy exceeds Seventy-Five Thousand and 00/100 Dollars ($75,000.00).

    D.    <u>**Personal Jurisdiction**</u>

30. This Court has personal jurisdiction over the Defendants for the following reasons:

    a.    their actions, as more fully described herein below, are directed at consumers across the country, including consumers in the state of Florida. All Defendants operate websites that are freely accessible from Florida and target consumers in the State of Florida, which involves, *inter* alia, the

    repeated transmission of files over the Internet in, to, and out of the State of Florida;

  b. they cause false demand letters to be directed to Wyndham in the State of Florida and interfered with Wyndham's business in the State of Florida, all of which involves the repeated use of the wires and mails to transmit correspondence and other items into the State of Florida;

  c. at least some of the Timeshare Contracts and Timeshare Owners at issue in this civil action were entered into in Florida or are Florida residents; and

  d. committing acts and torts which caused injury to Plaintiffs in Florida.

### E. Venue

31. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391 because, as described herein, a substantial part of the events giving rise to Plaintiffs' claims occurred in Florida, because the Defendants ultimately harm the consuming public and Wyndham in Florida, and Defendants' conduct giving rise to the claims set forth herein occurred in this District.

### F. Conditions Precedent

32. All conditions precedent to the bringing and maintenance of this action have been performed, were waived, would be futile if attempted, or have otherwise been satisfied or occurred.

## III. SPECIFIC FACTUAL ALLEGATIONS

### A. The Wyndham Entities

33. Wyndham is a global leader in the hospitality and vacation ownership industry with properties and a network spanning the world.

34. Wyndham Vacation Ownership, Inc. is the parent company or ultimate parent company of entities that conduct timeshare sales and development activities throughout the United States: Wyndham Vacation Resorts, Inc., Wyndham Resort Development Corporation, and SV, SVC-Americana and SVC-Hawaii.

35. As part of its business, WVR, WRDC, SV, SVC-Americana, and SVC-Hawaii enter into timeshare contracts with consumers (e.g., the Wyndham Owners). At the time owners purchase timeshares from WVR, WRDC, SV, SVC-Americana, and/or SVC-Hawaii the owners execute the Timeshare Contracts wherein the now-Wyndham Owners agree to pay an amount certain for the timeshare interest, as well as maintenance and/or annual fees to Wyndham for the upkeep of the timeshare units and common areas of the timeshare properties. In addition, the now-Wyndham Owners agree to pay a pro-rated share of the property taxes to Wyndham which is then submitted by Wyndham to the appropriate local tax collectors. Often, if a purchaser desires mortgage financing, he or she may apply for a mortgage, and after approval, may execute a Promissory Note and Mortgage, which are referenced and incorporated in the Purchase Agreement and become part of the Timeshare Contract. These Timeshare Contracts are legally binding contracts and, after the passage of a statutory rescission period, cannot be unilaterally rescinded.

### B. Links Between the Various Defendants

33. Slattery lists himself on the Internet as the 'managing partner' and/or 'founding partner' of the three defendant law firms: SSD, Del Mar, and Carlsbad.

34. SSD and Del Mar share the same address: 12250 El Camino Real, Suite 120, San Diego, California 92130.

35. Slattery formed Del Mar with another attorney, non-party John Donboli, Esq. ("Donboli"). Slattery and Donboli know each other from when they were both associates at the law firm known as Gordon Rees et al.

36. Slattery and Donboli have had a falling out and are currently attempting to conclude the business of Del Mar and have sued each other over legal fees associated with Del Mar. As a result, Slattery has moved his timeshare exit work from Del Mar to the newer Carlsbad.

37. Carlsbad has, at various points, briefly used two different domain names for hosting its website: <carlsbadlawgroup.com> and <carlsbadlg.com>. Presently, <carlsbadlawgroup.com> is inactive while <carlsbadlg.com> displays a mostly empty WordPress blog.

38. SSD owns the <carlsbadlg.com> domain name.

39. According to papers filed by Carlsbad attorneys in non-timeshare cases, the domain name their email utilizes is <carlsbadlg.com>.

40. According to that same paper, "effective immediately Slattery, Sobel & DeCamp, LLP has changed its firm name to Carlsbad Law Group, LLP." *See U.S. v. Zavala et al., Case No. 18-cr-03058-BAS, United States District Court for the Southern District of Florida, D.E. No. 82.*

41. SSD, Del Mar, and Carlsbad all share a phone number: 858-793-6244. This telephone number is listed on SSD's website and as the contact number on papers and pleadings signed by Del Mar and Carlsbad attorneys.

### C.     Slattery, SSD, Del Mar, and Carlsbad are the Law Group of a Timeshare Exit Company

42. Del Mar and Carlsbad, which are owned, controlled, and affiliated with Slattery and SSD, show all the classic signs of being the legal group portion of a timeshare exit company.

43. As set forth above, SSD, Del Mar, and Carlsbad are all linked together and are all being run by Slattery. It is unusual for one law firm to own the website for another law firm and share a telephone number with yet a third law firm.

44. None of SSD/Del Mar/Carlsbad has any substantial or clear advertising. Indeed, Carlsbad lacks even a functional webpage at this time.

45. Yet, despite the lack of any clear or obvious direct advertising (that is advertising conducted directly by SSD/Del Mar/Carlsbad and not advertising conducted on their behalf or by a third-party), SSD/Del Mar/Carlsbad has sent Wyndham approximately demand letters for at least 199 Wyndham Owners who are residents of the following states: Arkansas, Arizona, California, Washington, D.C., Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Massachusetts, Maryland, Michigan, Minnesota, Missouri, Mississippi, North Carolina, Nebraska, New Hampshire, New Jersey, New York, Nevada, Ohio, Oklahoma, Oregon, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin.

46. Wyndham has been unable to locate a single attorney working for SSD/Del Mar/Carlsbad who is admitted to practice in the State of Florida, despite their sending hundreds of demand letters to Wyndham in Orlando regarding the Timeshare Contracts, many of which are either substantially or entirely controlled by Florida law.

47. SSD/Del Mar/Carlsbad routinely send demand letters to Wyndham, including nonsensical and baseless allegations of violations of California law when none of Wyndham, the

Wyndham Owner, or the Timeshare Contract at issue have any connection to the State of California, and then do little to nothing to follow-up on those demand letters.

48. SSD/Del Mar/Carlsbad send demand letters to Wyndham and then do little to nothing to follow-up on those demand letters.

49. Thus, SSD/Del Mar/Carlsbad show all the signs of being a lawyer group affiliated with a marketing group as part of a larger timeshare exit scam.

50. Wyndham believes Does #1-10 are the marketing group working with, and funneling clients to, SSD/Del Mar/Carlsbad and are likely engaged in false and/or misleading advertising and promotion.

## COUNT I
## Tortious Interference with Contractual Relations

51. Wyndham adopts and realleges paragraphs 1-50 above as if fully set forth herein.

52. This is a cause of action for tortious interference with contractual relations.

53. Wyndham has contractual relationships with its timeshare owners.

54. Defendants have actual, constructive, and/or specific knowledge of the contractual relationships between Wyndham and the Wyndham Owners. The very fact that Plaintiffs have a business relationship with the Wyndham Owners is the basis upon which Defendants sought to establish a relationship with the Wyndham Owners.

55. Defendants, through various inter-related entities as described hereinabove, have successfully solicited Wyndham Owners and caused or induced them to breach and/or terminate their contractual relationships with Plaintiffs and, specifically, with WVR, WRDC, SV, SV-Americana, and/or SV-Hawaii.

56. In particular, Defendants have intentionally procured the breach of Wyndham's contractual relationships by soliciting identifiable Wyndham Owners[1] and persuading them to hire the Defendants to help "cancel" (in reality, breach) their Timeshare Contracts. The Defendants also procure breaches by directly instructing Wyndham Owners to stop paying their timeshare loans and maintenance fees and/or engaging in fraudulent transfers.

57. If Wyndham Owners knew the truth about Defendants' illusory and fraudulent services or about how Defendants' actions would adversely impact them, they would not pay exorbitant fees to the Defendants nor unlawfully terminate (through breach resulting in foreclosure) their timeshare interests.

58. Defendants have utilized improper, fraudulent and/or illegal means to interfere with Plaintiffs' contractual relations.

59. Defendants' actions were done with an improper motive and not made in good faith, but rather were made with the knowledge and predominant purpose to injure Wyndham or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from Defendants' actions and without reasonable grounds for the Defendants to believe that their actions were justified and proper.

60. As a direct and proximate result of Defendants' intentional misconduct, Wyndham Owners have terminated, or have baselessly sought to terminate, their contractual relationships with Plaintiffs and, more specifically, WVR, WRDC, SV, SV-Americana. and/or SV-Hawaii before the expiration of the terms of those contracts. These terminations, and

---

[1] The specific Wyndham Owners and Timeshare Contracts are identifiable. However, due to the substantial volume and length of said documents it is not practical to attach all of them to this Complaint as they would make the Complaint likely thousands, if not tens-of-thousands of pages long. Wyndham can provide the identities and documents in discovery. Moreover, Defendants are already aware of the identities of these Wyndham Owners and Timeshare Contracts as Defendants sent Wyndham letters related to these Wyndham Owners and Timeshare Contracts directly to Wyndham.

attempted terminations, also interfere with Wyndham's ability to enter into subsequent transactions with those same Wyndham Owners.

61. The Defendants did not and do not have any justification or privilege in procuring the breach of such contractual relationships, as the Defendants are strangers to the contractual relationships between Wyndham and its Owners, and their interference with Plaintiffs' business is willful and malicious.

62. Furthermore, Defendants profit greatly by accepting significant fees from Wyndham Owners then performing little or no actual legal work on their behalf to "cancel" their timeshare contracts. Defendants are not privileged to interfere with Wyndham's contractual relationships because the Defendants act in their own personal interests and without an honest belief that the strategy of defaulting on the Timeshare Contracts is justified by the exorbitant fees received by them or even the best course of action to terminate the Timeshare Contract, considering the Owner could *lawfully* terminate his or her contract for free, or at a much lower cost, by appealing directly to Wyndham or utilizing the Ovation® program. Furthermore, Defendants undermine their so-called lawyer privilege to recommend to its clients that the Timeshare Contract may be breached, by rarely filing lawsuits on behalf of those Wyndham Owners for the equitable rescission of those Timeshare Contracts and, indeed, lack lawyers admitted to practice in the states necessary to do so. Defendants' across-the-board strategy to induce its clients to breach their Timeshare Contracts is not sound, individualized legal advice done in the course of representation of any clients, but rather an overall business decision of the law firm itself that is not privileged.

63. As a direct and proximate result of the foregoing, Plaintiffs suffered damages. These damages are in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00).

64. Plaintiffs are entitled to damages against Defendants jointly and severally.

65. Defendants' ongoing conduct has caused and, if not permanently enjoined, will continue to cause irreparable harm to Wyndham in the disruption of customer and other contractual relations; therefore, Wyndham does not have an adequate remedy at law.

66. Defendants' conduct is intentional and willful and entitles Plaintiffs to an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request the Court enter final judgment in their favor and against the Defendants, jointly and severally, for actual damages, together with interest thereon, punitive damages, an award of court costs, entry of injunctive relief, and for such other and further relief as the Court deems appropriate. Plaintiffs demand a permanent injunction be entered against the Defendants and their agents, representatives, employees, affiliates, and those acting in active concert with them, prohibiting the Defendants from contacting Wyndham Owners and/or otherwise interfering with Plaintiffs' contractual relationships with such Wyndham Owners and for such other and further relief as the Court deems appropriate.

Respectfully Submitted,

*/s/ Alfred J. Bennington, Jr.*
**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**TODD F. KOBRIN, ESQ.**
Florida Bar No. 0946958
tkobrin@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile:  (407) 849-7255

and

**DANIEL J. BARSKY, ESQ.**
Florida Bar No. 25713
dbarsky@shutts.com
**SHUTTS & BOWEN LLP**
200 South Biscayne Boulevard, Suite 4100
Miami, Florida 33131
Telephone: (561) 650-8518
Facsimile:  (561) 822-5527

*Attorneys for Plaintiffs*

Dated: October 4, 2019

ORLDOCS 17208340 1