## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**WYNDHAM VACATION
OWNERSHIP, INC., WYNDHAM
VACATION RESORTS, INC.,
WYNDHAM RESORT
DEVELOPMENT
CORPORATION, SHELL
VACATIONS, LLC, SVC-
AMERICANA, LLC, and SVC-
HAWAII, LLC,**

            **Plaintiffs,**

**v.**                                 **Case No: 6:19-cv-1908-WWB-EJK**

**SLATTERY, SOBEL & DECAMP,
LLP, DEL MAR LAW GROUP,
LLP, CARLSBAD LAW GROUP,
LLP, JL "SEAN" SLATTERY,
PANDORA MARKETING, LLC,
PANDORA SERVICING, LLC,
INTERMARKETING MEDIA,
LLC, KENNETH EDDY,
WILLIAM WILSON, and RICH
FOLK,**

            **Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the Court on the following Motions:

- Plaintiffs' Motion for Assessment of Expenses and Fees Pursuant to the Sanctions Order (Doc. 724); and

- The Motion for Sanctions filed by Pandora Marketing, LLC; Pandora Servicing, LLC; Rich Folk; and William Wilson (the "Pandora

Defendants") (Doc. 799).

After being granted an extension of time, the Pandora Defendants filed a redacted response in opposition to the Motion for Assessment of Expenses and Fees on April 4, 2022.[1] (Doc. 753.) Notably, although Plaintiffs' Motion for Assessment of Expenses and Fees sought relief against both the Pandora Defendants and Intermarketing Media, LLC ("Intermarketing"), Intermarketing did not timely file a response in opposition. On March 22, 2022, approximately ten days after its response was due, Intermarketing filed a motion for extension of time to respond, acknowledging that the Court referred only to the Pandora Defendants in granting an extension of time, yet nonetheless requesting that the extension also apply to Intermarketing. (Doc. 735.) The Court denied Intermarketing's request because Intermarketing "did not seek an extension of time prior to the response deadline, and the Court's orders specifically listed the parties that were granted an extension of time."[2] (Doc. 736.) As such, the Motion for Assessment of Expenses and Fees is construed as unopposed as it relates to Intermarketing. *See* Local Rule 3.01(c) ("If a party fails to timely respond, the motion is subject to treatment as unopposed.").

---

[1] Following the undersigned's Order denying Plaintiffs' motion to seal the response (Doc. 789), the Pandora Defendants filed unredacted copies of their response in opposition and the accompanying exhibits. (*See* Doc. 794.) The Court cites to these unredacted versions hereinafter.

[2] Specifically, the Court's Endorsed Order stated, "Pandora Marketing, LLC; Pandora Servicing, LLC; William Wilson; and Rich Folk may have until and through April 4, 2022, to respond . . ." (Doc. 733.)

On June 21, 2022, after being granted an extension of time to file their response, Plaintiffs filed a response in opposition to the Motion for Sanctions.[3] (Doc. 820.) Thus, both Motions are ripe for review. Upon consideration, I respectfully recommend the Motion for Assessment of Expenses and Fees be granted in part and denied in part and the Motion for Sanctions be denied.

## I.     BACKGROUND

The instant dispute arises from this Court's Order adopting the undersigned's Report and Recommendations granting the sanction of default and the striking of pleadings by the Pandora Defendants and Intermarketing. (Docs. 599, 689.) As part of its Order, the Court awarded Plaintiffs' their "reasonable expenses, including attorneys' fees," for the motions filed at Docs. 82, 85, 86, 87, 88, 118, 127, 358, 368, 433, 435, 500, and 547, with such expenses to be paid jointly and severally between the Pandora Defendants and Intermarketing. (Docs. 599 at 18; 689 at 11.) Therefore, based on this Court's Order, Plaintiffs filed the instant motion seeking $206,041.66 in reasonable expenses and attorney's fees. (Doc. 724.) The Pandora Defendants' response in opposition (Doc. 794-1) and Motion for Sanctions (Doc. 799) are based largely on the same argument: that Plaintiffs have violated a confidential settlement agreement (the "CSA") such that a substantial deduction to Plaintiffs' award of expenses and vacatur of default against the Pandora Defendants is warranted.

---

[3] Plaintiffs initially filed a redacted response on the docket. (Doc. 820.) The undersigned thereafter directed the parties to file a motion to seal, or otherwise file the unredacted response on the docket. (Doc. 824.) On July 6, 2022, Plaintiffs filed the unredacted response, which the Court cites to hereinafter. (Doc. 831-1.)

## II.    DISCUSSION

### A. Motion for Sanctions

The Pandora Defendants have undertaken an aggressive, yet ultimately unpersuasive, effort to extricate themselves from their bind. Specifically, the Pandora Defendants ask that the Court, based on Plaintiffs' alleged violations of a confidential settlement agreement between the parties, "(i) strike DE Nos. 500, 547, 689 (ii) vacate the defaults against defendants, (iii), permit Pandora to proceed to trial on liability, (iv) award appropriate attorneys' fees to Pandora, and (v) grant any other relief that the Court finds appropriate." (Doc. 799 at 9–10.) This order will be limited to the pertinent question from which all other requested relief stems: are Rule 37(b) sanctions appropriate in response to an alleged failure to comply with a confidential settlement agreement? The answer is no.

The Pandora Defendants seek sanctions against Plaintiffs under Rule 37(b)(2). (Doc. 799 at 7.) The relevant portion of the Rule states as follows:

> (b) Failure to Comply with a *Court Order*.
>
>> (2) Sanctions Sought in the District Where the Action Is Pending.
>>
>>> (A) For Not Obeying a *Discovery Order*. If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—*fails to obey an order* to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.

Fed. R. Civ. P. 37(b) (emphasis added).

In support of their argument that Rule 37(b) sanctions are available, the Pandora Defendants repeatedly mischaracterize a previous Order from the undersigned. In an Order granting the Pandora Defendants' Motion for Protective Order, the undersigned stated that "[b]ecause the Court enforces stipulated confidentiality agreements between the parties in the same manner as a court order, the Court looks to Federal Rule of Civil Procedure 37(b)(2) for appropriate sanctions." (Doc. 210 at 8.) As Plaintiffs note, the Court's reasoning references the Case Management and Scheduling Order (the "CMSO"), which states that "parties may reach their own agreement regarding the designation of materials as 'confidential.' . . . The Court will enforce stipulated and signed confidentiality agreements." (Docs. 30 at 4; 210 at 5–6.)

Both the CMSO and the undersigned's previous Order are intended to avoid the need for the Court to enter a protective order in any given case by allowing the parties to stipulate among themselves to binding confidentiality agreements. In sanctioning Plaintiffs, the undersigned noted that the parties "entered into a stipulated and signed confidentiality agreement" that provided:

> Pursuant to Rule 502(d) for the Federal Rules of Evidence, inadvertent disclosure and/or production of Subject Discovery Material claimed to be subject to either the attorney-client privilege or the work product doctrine does not waive the applicability of such privilege or doctrine relative to the inadvertently disclosed and/or produced Subject Discovery Material. If any such Subject Discovery Material is inadvertently disclosed to the Receiving Party by the Producing Party, the Producing Party may request that the Receiving Party transfer such Subject Discovery Material back to the Producing Party, and the Receiving

Party must comply by returning such Subject Discovery Material, provided, however, that such request must be made within thirty (30) days of the Producing Party's first discovery of the inadvertent production. Within seven (7) calendar days of the Receiving Party's return of such inadvertently produced Subject Discovery Material, the Producing Party shall serve a privilege log listing the returned Subject Discovery Material that sufficiently identifies the document and the basis for the privilege asserted. The Receiving Party shall then have the right, but not the obligation, to seek relief from the Court challenging the Producing Party's claim of privilege or work product protection.

(Doc. 210 at 6.) The undersigned found that, rather than returning privileged documents that were inadvertently produced, Plaintiffs "decided to affirmatively utilize the documents to further the ends of their litigation strategy." (*Id.* at 7.) Thus, Plaintiffs' violations of "the attorney-client privilege, Rule 26(b)(5)(B), and the parties' confidentiality agreement" formed the basis for sanctions against Plaintiffs. (*Id.* at 8.)

Now, years later, the Pandora Defendants attempt to argue that the Court's enforcement of a stipulated confidentiality agreement should apply identically to a confidential settlement agreement, such that any alleged violation of said agreement should, among other things, warrant the vacatur of default. But other than a flawed interpretation of the undersigned's previous order, the Pandora Defendants provide no support for such an incredible request. (*See generally* Doc. 799.) Critically, the Pandora Defendants have failed to explain, or even address, why a settlement agreement should be treated the same as a confidentiality agreement. (*See id.*) Thus, in light of the complete absence of support for the extraordinary relief sought, the undersigned recommends that the Court deny in its entirety the Pandora Defendants' Motion for

Sanctions.[4] *See Williams v. Alabama Dep't of Corr.*, 649 F. App'x 925, 927 (11th Cir. 2016) ("The district court did not abuse its discretion in denying Williams's request for Rule 37 sanctions. There was no court order regarding discovery, so Rule 37(b) sanctions do not come into play.").

### B.        Motion for Attorney's Fees

As noted above, the instant Motion for Assessment of Expenses and Fees relates back to the undersigned's Report and Recommendations (Doc. 599), and the Court's subsequent adoption of such (Doc. 689), awarding reasonable expenses, including attorney's fees, for the motions filed at Docs. 82, 85, 86, 87, 88, 118, 127, 358, 368, 433, 435, 500, and 547.

The CSA referenced above again comes into play with regard to Plaintiffs' Motion for Assessment of Expenses and Fees. (Doc. 724.) The Pandora Defendants advance several arguments in which they contend Plaintiffs' demand for fees and expenses should be greatly reduced or denied in its entirety. (*See* Doc. 794-1.) The undersigned addresses each argument in turn.[5]  However, as a preliminary matter, the undersigned addresses whether this Court has jurisdiction to enforce the terms of the confidential settlement agreement.

---

[4] To the extent the requested relief involves enforcement of the CSA, the undersigned addresses below the propriety of exercising jurisdiction over this agreement. *See infra* Section II(B)(1).

[5] The Pandora Defendants do not challenge the hourly rate requested by Plaintiffs.

1.       *Jurisdiction over the CSA*

In their response to the Motion for Expenses and Fees, the Pandora Defendants argue that Plaintiffs' "continuous violation of the Confidential Settlement Agreement mandates that Plaintiffs' requested amount of fees and expenses should be significantly reduced." (Doc. 794-1 at 9.) The Pandora Defendants state that "[d]enial is warranted because Plaintiffs have violated the terms of the Confidential Settlement Agreement. In this district such agreements are enforced by the Court 'in the same manner as a court, [and] the court looks to Federal Rule of Civil Procedure 37(b)(2) for appropriate sanctions.'" (*Id.*) (citation omitted). The undersigned has already addressed this argument above, *see supra* Section II(A), and notes that besides this mischaracterization, the Pandora Defendants do not provide any basis for this Court to exercise jurisdiction over, much less to interpret, the confidential settlement terms reached between the parties. Although not captioned in such a manner, the Pandora Defendants' requests related to the CSA essentially constitute a motion to enforce the terms of the CSA. Thus, the Court must consider whether it has jurisdiction to enforce such a settlement.

"Enforcement of [a] settlement agreement . . . whether through award of damages or decree of specific performance . . . requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) (ruling that the district court lacked jurisdiction to enforce a settlement agreement because the court did not retain jurisdiction to do so in its order of dismissal). A court may agree to retain its jurisdiction after the parties file a notice of settlement or stipulation of dismissal. *Id.*

at 382. "Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* at 382; *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1279 (11th Cir. 2012) ("Underlying *Kokkonen* is the well-established proposition that jurisdiction cannot exist by mere consent of the parties. To retain jurisdiction to enforce a settlement agreement, the court itself must act; agreement by the parties is not enough." (citation omitted)). The holding in *Kokkonen* clearly "precludes the exercise of ancillary jurisdiction to enforce the terms of a settlement agreement that resolved an action in federal court." *De Varona v. Discount Auto Parts, LLC*, 935 F. Supp. 2d 1335, 1341 (S.D. Fla. 2013) (citing *Anago*, 677 F.3d at 1278). While the instant matter differs in that the action has not been subject to settlement or a stipulation of dismissal, the undersigned considers the Supreme Court's guidance in *Kokkonen* as to whether the exercise of ancillary jurisdiction would be appropriate here.

There, the Court stated that ancillary jurisdiction is generally asserted "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent . . . and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 379–80 (citations omitted). Under the first instance, the Court found that "the facts underlying respondent's dismissed claim for breach of agency agreement and those underlying its claim for breach of settlement agreement have nothing to do with each other; it would neither be necessary nor even particularly efficient that they be adjudicated together." *Id.* at 380. Under the "second head of

ancillary jurisdiction," the Court noted that "the only order here was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement." *Id.* The Court distinguished that the situation would have been

> quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist. That, however, was not the case here. The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order.

*Id.* at 381.

However, because the "facts to be determined with regard to such alleged breaches of contract are quite separate from the facts to be determined in the principal suit, and automatic jurisdiction over such contracts is in no way essential to the conduct of federal-court business," the Supreme Court found there was no inherent power to enforce the terms of the parties' settlement agreement under the doctrine of ancillary jurisdiction. *Id.* at 381.

Using this guidance, the undersigned first considers whether the facts underlying Plaintiffs' suit and those underlying the Pandora Defendants' claim for breach of settlement agreement are at all related. They are not. The former is a suit that has brought the following causes of action: false advertising, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1); contributory false advertising, in violation of 15

U.S.C. § 1125(a)(1); tortious interference with contractual relations; violation of Florida's Deceptive and Unfair Trade Practices Act; and civil conspiracy to commit tortious interference. (Doc. 36.) The facts underlying these claims "have nothing to do with" a breach of settlement claim. *Kokkonen*, 511 U.S. at 380. Thus, the undersigned finds no reason for the two to be adjudicated together. Moreover, this Court's Order imposing sanctions stated that "Pandora Marketing willfully disregarded the Court's orders to compel discovery, and that the remaining Marketing Defendants willfully relied on Pandora Marketing to produce responsive discovery on their behalf despite being well aware of Pandora Marketing's willful noncompliance." (Doc. 689 at 5.) Thus, sanctions were not solely based on the failure to produce certain documents, but rather the repeated violations of this Court's Orders. The question of whether Plaintiffs breached the CSA has no effect on the undersigned's finding that the "Marketing Defendants have evidenced a pattern of inexcusable disregard for the authority of this Court and the larger civil discovery process." (Doc. 599 at 14) (quotation marks and citation omitted).

Nor is ancillary jurisdiction appropriate under the Court's "power to protect its proceedings and vindicate its authority." *Id.* As discussed above, the Pandora Defendants provide no authority, other than their misguided argument addressed above, for this Court's enforcement of the CSA. The Court did not endorse or order compliance with the parties' settlement agreement. The CSA was never adopted or incorporated into an order. Thus, any alleged violation of the CSA by Plaintiffs is just like a claim for a violation of any other settlement agreement, which would be

appropriately enforced in state court. Indeed, "[s]ettlement agreements are contracts and thus may be adjudicated in courts with jurisdiction over the contract." *Anago*, 677 F.3d at 1281. When a settlement agreement is not made part of a court order, as is here, "it is merely a private contract arising out of a case in federal court and has nothing to do with the underlying case." *Id.* As such, the undersigned recommends that the Court decline to consider argument regarding the CSA in regard to the Motion for Expenses and Fees.

However, should the Court find consideration of the CSA to be appropriate, the undersigned recommends that the Court exclude only Plaintiffs' expenses and fees related to motions filed on or prior to October 5, 2020, as this appears to be the relevant date from the CSA from which Plaintiffs agree not to seek sanctions. (Doc. 794-2 at 2) ("Wyndham agrees not to seek sanctions against the Marketing Defendants and/or their counsel in connection with any issues raised in and/or by the Sanctions Motion, which issues raised accrued on or prior to October 5, 2020."). This would exclude expenses and fees related to Docs. 82, 85, 86, 87, 88, 118, and 127.

## 2.    *Tabulation Error*

Separate from their arguments regarding the CSA, the Pandora Defendants also challenge a "tabulation error," in which they state that there appears to be included a charge for $350 that is not associated with any legal work or expenses. (Doc. 794-1 at 6.) The undersigned agrees. There is no explanation for the $350 amount, and it appears to have been placed in error. (*See* Doc. 724-1 at 16.) As such, the undersigned recommends a $350 reduction from the total amount requested by Plaintiffs.

### 3.        *Block Billing*

The Pandora Defendants also challenge several entries on the basis that "many of the legal time entries are billed in blocks of time with no segregation of differing legal tasks enumerated within a block of time billed." (Doc. 794-1 at 6.) The Pandora Defendants contend that all block billing "should be excluded unless additional information is provided." (*Id.* at 7.) Specifically, the total amount of hours objected to by the Pandora Defendants on the basis of block billing equals 60.1 hours as to Attorney Michael J. Quinn and 8.9 hours as to Attorney Justin A. Green.[6] (*Id.* at 6–7.)

A fee applicant should present records detailing the amount of work performed, in which the general subject matter of time expenditures should be set out with sufficient particularity that the court can assess time claimed for each activity. *George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1290 (M.D. Fla. 2000); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012). The practice of block billing can warrant "reduction of the number of hours claimed in the attorney's fee motion." *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1378 (M.D. Fla. 2010). While attorneys need not account for

---

[6] The Pandora Defendants challenge an entry dated August 18, 2021, for Michael J. Quinn. (Doc. 794-1 at 6.) However, no such entry exists, and as the Court is unclear as to what the Pandora Defendants intended to challenge, this is excluded from the undersigned's consideration. (*See* Doc. 724-1 at 12.)

every moment, they must be able to explain the nature of the work via discrete entries. *Id.* The court has broad discretion in determining the extent to which a reduction in fees is warranted by block billing. *See Pierre-Louis v. Baggage Airline Guest Servs., Inc.*, No. 19-cv-61306-RAR, 2021 WL 3710139, at *20 (S.D. Fla. Aug. 4, 2021), *report and recommendation adopted*, No. 19-cv-61306-RAR, 2021 WL 3709265 (S.D. Fla. Aug. 20, 2021) (finding block billing alone insufficient for further reduction of attorney's fee award); *Schofield v. Suraj Properties, Inc.*, No. 8:18-cv-31-T-WFJ-JSS, 2019 WL 3944439, at *3 (M.D. Fla. Aug. 21, 2019) (reducing presumptive lodestar for an attorney by 25% "to account for extensive block billing").

The Court notes however, that the mere inclusion of two tasks in a single entry is not, in itself, evidence of block billing. *Machado v. Da Vittorio, LLC*, No. 09-23069-CIV, 2010 WL 2949618, *3 (S.D. Fla. July 26, 2010); *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1312 (S.D. Fla. 2009). When the tasks are intertwined, a thorough description of the activities clarifies, rather than obscures, the record. *Id.*

The undersigned first notes that the Pandora Defendants do not request a reduction based on an argument that the tasks are not compensable. Having reviewed the challenged entries, the tasks challenged for block billing are, in fact, compensable, and thus there is no risk of awarding fees for clerical tasks. Additionally, each entry "contains a good level of detail about what work was done in the associated time frame, and the claimed hours for each entry are modest." *United States v. Tran*, No. 5:15-cv-60-Oc-CEM-PRL, 2020 WL 9455629, at *6 (M.D. Fla. Oct. 5, 2020), *report*

*and recommendation adopted*, No. 5:15-cv-60-Oc-CEM-PRL, 2020 WL 9455589 (M.D.
Fla. Nov. 23, 2020). The undersigned also notes that in light of the overall number of
entries and amount of hours, the use of block billing was not extensive.

The Eleventh Circuit has stated that "the computation of a fee award is
necessarily an exercise of judgment, because '[t]here is no precise rule or formula for
making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305
(11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436) (alterations in original). While the
Pandora Defendants advocate for the complete exclusion of any time entries that were
block billed, in light of the absence of any challenge arguing the tasks are clerical,
excessive, or otherwise not compensable,[7] the undersigned recommends the Court
deny the request and award Plaintiffs their requested fees. *See Pierre-Louis*, 2021 WL
3710139, at *20 (S.D. Fla. Aug. 4, 2021) (finding block billing alone insufficient for
further reduction of attorney's fee award); *Carithers v. Mid-Continent Cas. Co.*, No. 3:12-
CV-890, 2015 WL 12841075, at *2 (M.D. Fla. Nov. 13, 2015) (declining to reduce
block billing entries where all tasks were compensable and the attorney "at least
identifie[d] the general subject matter of each time entry").

---

[7] The undersigned addresses the Pandora Defendants' challenges with regard to legal
research included in block billed time entries below. *See infra* Section II(B)(4)(i).

### 4.      *Reasonableness of Hours Expended*

#### i.      *Legal Research*

Attorney time associated with conducting and reviewing legal research is appropriately compensable. *See Am. Charities for Reasonable Fundraising Regul., Inc. v. Pinellas Cnty.*, 278 F. Supp. 2d 1301, 1328 (M.D. Fla. 2003). While the Pandora Defendants do not appear to challenge this notion, they challenge a number of entries related to legal research, stating that "legal research on all such issues should likely have already been completed by the Shutts firm." (Doc. 794-1 at 7.) They also argue that any legal research "dealing with legal standards for sanctions and related matters should be excluded, as Plaintiffs' lawyers have briefed such standards previously." (*Id.* at 8.)

This argument is unpersuasive. For example, several of the challenged entries deal with research in connection with Plaintiffs' Amended Motion for Sanctions (Doc. 500). (*See* Doc. 794-1 at 7–8.) It is unclear to the undersigned how or why Plaintiffs would have already conducted legal research on issues, such as default judgment and Rule 37 sanctions, that had not previously existed. The legal research included in, for example, the Amended Motion for Sanctions, applied very specifically to the facts and circumstances at hand. The undersigned does not accept the argument that, because Plaintiffs may have already conducted legal research on a general issue, such as sanctions, they should never conduct research on the topic again. Without additional explanation as to what research should have been conducted previously (*see* Doc. 794-1 at 7–8), the undersigned does not find exclusion of attorney time spent on legal

research to be warranted.

### ii.    Other Tasks

The Pandora Defendants challenge 1.3 hours spent by Attorney Quinn to "prepare for telephone conference with Jonathan Parrott to discuss and confer on Intermarketing's responses and objections," arguing that "preparation for meet and confers in such topics would likely take less time." (Doc. 794-1 at 7.) The undersigned does not find 1.3 hours to be an unreasonable amount of time to prepare for a telephone conference regarding various discovery responses and objections.

The Pandora Defendants also challenge an entry by Attorney Green on the basis that it is "unlikely that each of the listed tasks would take exactly 3.9 hours." (*Id.* at 7.) This does not appear to constitute a challenge to the number of hours expended, nor do there appear to be any other challenges to the compensability of the task; thus, the Court declines to engage in reduction based on the mere fact that a task took the same amount of time as another task. If the Court were to follow this logic, several entries would have to be stricken due to the identical amounts of time they took.

### 5.    Entries Without Supporting Detail

Finally, the Pandora Defendants challenge three entries on the basis that additional supporting detail is lacking. (Doc. 794-1 at 8.) The undersigned agrees that expenses should not be awarded for these entries. For example, the Pandora Defendants note that while Attorney Green included two time entries in which he met "with lead counsel," there are no corresponding entries for other attorneys. (*Id.* at 8–9.) The undersigned agrees that such a meeting should have been corroborated in other

attorneys' time entries. The absence of corroboration supports exclusion of the entries.

The Pandora Defendants also challenge an entry by Attorney Quinn in which he "analyze[d] Pandora's continued discovery stonewalling and spoilation of evidence in preparation of further discovery motions against Pandora." (Doc. 724-1 at 9.) The undersigned agrees that one "cannot tell what actual legal work was performed based on the description." (*Id.*) As such, these three entries, totaling 2.9 hours, should be excluded.

### 6.    *Expenses*

With regard to Plaintiffs' requested expenses, the Pandora Defendants state expenses "should be reimbursed, if at all, without any mark-up, on a dollar-for-dollar basis only. Plaintiffs should so attest before any expenses are awarded." (Doc. 794-1 at 9.) In their Motion, Plaintiffs have attested to $12,529.16 in expenses incurred and provided a description of each expense. (*See* Doc. 724-1 at 24.) In the absence of any specific objection to the incurred expenses, the undersigned recommends the Court grant the Motion with respect to the requested expenses.[8]

---

[8] It is the Court's intention that only actual expenses should be reimbursed. If the amount included in the Motion for Expenses and Fees is greater than the actual amount spent, Plaintiffs should file a notice with the actual amount spent.

## III.   RECOMMENDATION

Upon consideration of the foregoing, I respectfully recommend that the Court:

1.  **DENY** the Motion for Sanctions (Doc. 799);

2.  **GRANT IN PART AND DENY IN PART** Plaintiffs' Motion for Assessment of Expenses and Fees Pursuant to the Sanctions Order (Doc. 724);

3.  **AWARD** attorney's fees in the amount of $192,092.50 and expenses in the amount of $12,529.16 to be paid jointly and severally between the Pandora Defendants and Intermarketing.

4.  Alternatively, should the Court decide to exclude expenses and fees related to Docs. 82, 85, 86, 87, 88, 118, and 127, the undersigned recommends **AWARDING** attorney's fees in the amount of $146,562.50 and expenses in the amount of $12,529.16.

## <u>NOTICE TO PARTIES</u>

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on July 22, 2022.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE