UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WYNDHAM VACATION
OWNERSHIP, INC., WYNDHAM
VACATION RESORTS, INC.,
WYNDHAM RESORT
DEVELOPMENT
CORPORATION, SHELL
VACATIONS, LLC, SVC-
AMERICANA, LLC, and SVC-
HAWAII, LLC,

        Plaintiffs,

v.                                                                          Case No: 6:19-cv-1908-WWB-EJK

SLATTERY, SOBEL & DECAMP,
LLP, DEL MAR LAW GROUP,
LLP, CARLSBAD LAW GROUP,
LLP, JL "SEAN" SLATTERY,
PANDORA MARKETING, LLC,
PANDORA SERVICING, LLC,
INTERMARKETING MEDIA,
LLC, KENNETH EDDY,
WILLIAM WILSON, and RICH
FOLK,

        Defendants.

## REPORT AND RECOMMENDATION

This cause comes before the Court on the Motions to Dismiss for Lack of Standing (the "Motions") filed by JL "Sean" Slattery; Del Mar Law Group, LLP; Carlsbad Law Group, LLP; and Slattery, Sobel & DeCamp, LLP (the "Lawyer Defendants") and Pandora Marketing, LLC; Pandora Servicing, LLC; Rich Folk; and William Wilson (the "Pandora Defendants") (jointly, the "Moving Defendants"), filed

May 31, 2022. (Docs. 800, 802.) On June 21, 2022, Plaintiffs filed an omnibus response in opposition to the Motions. (Doc. 822.) On July 8, 2022, the Moving Defendants, with leave of Court, filed their replies. (Docs. 834, 835.) Thus, the Motions are ripe for review. Upon consideration, I respectfully recommend that the Motions be denied.

## I. BACKGROUND

Plaintiffs instituted this action on October 4, 2019. (Doc. 1.) Four months later, on January 21, 2020, Plaintiffs filed their Amended Complaint, bringing the following causes of action: false advertising, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1); contributory false advertising, in violation of 15 U.S.C. § 1125(a)(1); tortious interference with contractual relations; violation of Florida's Deceptive and Unfair Trade Practices Act; and civil conspiracy to commit tortious interference. (Doc. 36.)

The instant issue regarding standing arises from the Lawyer Defendants' and Pandora Defendants' requests for leave to file motions to dismiss, in which the Moving Defendants alleged that Plaintiffs may not have "owned the loan contracts at the time they filed their amended complaint." (*See* Docs. 748; 768 at 4.) Notably, in the Pandora Defendants' request for leave to file a motion to dismiss, they stated that both the "Pandora and the Lawyer Defendants" alleged that "no Plaintiff has standing for economic damages or injunctive relief" as it is the "law of the case that if no Plaintiff owns the loans at the time the complaint was filed, there is no standing for economic damages." (Doc. 768 at 4.)

After considering both of the Moving Defendants' requests, on May 16, 2022, the undersigned granted the Lawyer Defendants and the Pandora Defendants leave to file motions to dismiss in order to address the newly raised issue of whether Plaintiffs owned the relevant loan contracts at issue in the action, and thus whether Plaintiffs have standing. (Doc. 793.) However, the undersigned cautioned that the motions to dismiss should address "only the issue of standing." (*Id.* at 6.) As such, in considering the instant Motions, the undersigned considers only the question of whether Plaintiffs have standing to assert the claims alleged in the Amended Complaint. The undersigned does not consider any argument that falls outside of this narrow scope.

## II.   STANDARD

A motion that alleges lack of standing attacks the district court's subject matter jurisdiction and is thus brought pursuant to Rule 12(b)(1). *Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1312 (S.D. Fla. 2013). Subject matter jurisdiction may be attacked in two ways—a facial attack or a factual attack. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).[1] With a facial attack, a court reviews the allegations in the complaint and determines whether the plaintiff has sufficiently alleged subject matter jurisdiction. *Id.* Conversely, a court may look outside the four corners of the complaint, to things such as affidavits and testimony, when a defendant factually attacks the existence of subject matter jurisdiction. *Id.* "A 'factual attack' . . .

---

[1] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings . . . ." *Id.* If jurisdiction is found to be lacking, the court dismisses the case without prejudice. *See Crotwell v. Hockman-Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984) (finding that the district court erred when dismissing a case for a lack of subject matter jurisdiction with prejudice instead of without prejudice). When a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed or noticed . . . ." 28 U.S.C. § 1631 (2018). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). It is presumed that a federal court lacks jurisdiction in a case until the plaintiff shows the court has jurisdiction over the subject matter. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### III. DISCUSSION

#### A. Temporal Determination of Standing

Although the Pandora Defendants initially stated that the Moving Defendants would "argue that none of the six Plaintiffs owned the loan contracts at the time they filed their amended complaint," the Lawyer Defendants and Pandora Defendants appear to present differing theories as to the proper method of evaluating Plaintiffs' standing. (Doc. 768 at 4.) The Lawyer Defendants argue in both their Motion and reply that the "central issue in this case is . . . who owned the loans at the time of the

wrongful conduct and the resulting damages."[2] (Doc. 800 at 8 (emphasis removed).) By contrast, the Pandora Defendants state that standing must be determined "as of the date of filing the Complaint," arguing that "Plaintiffs cannot establish standing to bring causes of action arising out of contracts they did not own at the time the Complaint was filed . . . ."[3] (Doc. 802 at 13.) Meanwhile, Plaintiffs contend that "the actual issue before the Court is whether Wyndham had standing at the time it filed the Amended Complaint." (Doc. 822 at 22.) The undersigned discusses this issue as a preliminary matter.

As both Plaintiffs and the Pandora Defendants appear to agree, the law is clear that Article III standing "must be determined as of the time that the plaintiff's complaint is filed."[4] *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1212 (11th Cir. 2019); *see, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992) ("[S]tanding is to be determined as of the commencement of suit . . ."); *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir.

---

[2] The undersigned notes that despite this argument, the Lawyer Defendants also argue that "whether the date of 'reacquisition' was before or after the filing of the Amended Complaint, [is] a second key issue in a 'standing' evaluation." (Doc. 800 at 8 n.3.)
[3] Confusingly, in their reply, the Pandora Defendants state that Plaintiffs "do not have standing if they did not own the 934 loan contracts at the time of the alleged wrongful conduct or tort-related causes of action, by Jan. 21, 2020 when the Amended Complaint was filed." (Doc. 835 at 2.) This statement seems to simultaneously advance the argument that standing must be determined as of the filing of the Amended Complaint and as of the date of the alleged wrongful conduct.
[4] Although the Pandora Defendants argue standing should be determined at the time of the filing of the complaint, they also present nearly identical arguments as the Lawyer Defendants regarding Plaintiffs' right to sue in tort, which are contemplated *infra*. (*See* Docs. 800 at 6–7; 802 at 15.)

2003) ("Article III standing must be determined as of the time at which the . . . complaint is filed.").

The Lawyer Defendants' arguments to the contrary are unpersuasive. First, the Lawyer Defendants argue that if Plaintiffs assigned the relevant loan contracts to a third party, "Plaintiffs' status as a former owner of the contracts would not give them standing to assert these causes of action." (Doc. 800 at 6; *see also* Doc. 834 at 4.) The non-binding case cited in support, *In re Gonzales*, is inapposite, because in *Gonzales*, the loan in question was sold to a third-party, and notably, was *not* alleged to have been re-acquired. *See In re Gonzales*, No. 12-47945 MEH, 2013 WL 6797171, at *4 (Bankr. N.D. Cal. Dec. 23, 2013). By contrast, here, Plaintiffs specifically state that all of the relevant contracts have been reacquired, and at least 647 of the relevant contracts were re-acquired prior to the filing of the Amended Complaint. (Doc. 822 at 9.)

The Lawyer Defendants next argue that even if Plaintiffs later reacquired the loan contracts, "any cause of action accruing prior to the reacquisition would belong to the entity which owned those loan contracts at the time the cause of action accrued." (Doc. 800 at 6–7; *see also* Doc. 834 at 4.) This argument is equally unavailing, and as Plaintiffs state, constitutes a misreading of the very case the Moving Defendants cite for support. The Moving Defendants argue *Ginsberg v. Lennar Fla. Holdings, Inc.* stands for the principle that even if Plaintiffs reacquired the relevant loan contracts, Plaintiffs would not have also obtained the assignment of any cause of action or tort claim. (*See* Docs. 800 at 7; 802 at 15.)

However, the Florida court in *Ginsberg* noted that "assignability of a cause of action is the rule rather than the exception. . . . A party may assign almost any cause [of] action, with the noted exception of claims for personal injury." *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 496 (Fla. Dist. Ct. App. 1994) (citations omitted). There, the court found that the assignment of mortgage made "no mention of, or attempt to, assign to Lennar any cause of action" and that the party failed to allege any assignment that "gave [] any right to prosecute any cause of action." *Id.* Considering that *Ginsberg* held that assignability of a cause of action is the rule rather than the exception, and that Plaintiffs have presented evidence that both the originators of the contracts and the special-purpose entities (the "SPEs") to which they were assigned both "intended the transaction to include transfer of causes of action," the undersigned is unconvinced that any alleged reacquisition of a loan contract by Plaintiffs did not include the rights to a cause of action. (Doc. 822 at 14.)

The additional case law cited in the Pandora Defendants' reply is also inapposite.[5] For example, in *VCA Cenvet*, the court analyzed whether, under California law, an informal transfer between corporate entities with common ownership was enforceable. Ultimately, the court found that the transfer and assignment were allowed and that plaintiff had standing. *VCA Cenvet, Inc. v. Vill. Veterinary Ctrs., Inc.*, No. 1:11-cv-3119-WSD, 2012 U.S. Dist. LEXIS 124421, at *20 (N.D. Ga. Aug. 31, 2012). Additionally, the Pandora Defendants' reference to *Wall*

---

[5] The Lawyer Defendants do not cite any new case law in their reply. (*See* Doc. 834.)

*Street Mortgage Bankers* is misleading because the standard the Pandora Defendants cite referred to summary judgment, rather than a motion to dismiss. *Wall St. Mortg. Bankers, LTD. v. Attorneys' Title Ins. Fund, Inc.*, No. 8-21648-CIV-MORENO/TORRES, 2009 U.S. Dist. LEXIS 132890, at *13 (S.D. Fla. Sept. 9, 2009).

In fact, the cases that the Moving Defendants cite highlight the distinction between Defendants' standing argument and their argument regarding assignment of causes of action. *See VCA Cenvet, Inc.*, 2012 U.S. Dist. LEXIS 124421 (N.D. Ga. Aug. 31, 2012). While the challenge to Plaintiffs' Article III standing deals with the constitutional limitations on this Court's jurisdiction, the argument regarding assignments more accurately concerns whether Plaintiffs are "the person[s] entitled under the governing substantive law to enforce the asserted right," or, in other words, whether Plaintiffs are the real party in interest under Federal Rule of Civil Procedure 17. *Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992); *cf. Sas v. Serden Techs., Inc.*, No. 12-cv-61296, 2013 WL 12086638, at *3 (S.D. Fla. Dec. 3, 2013) (finding that while defendants' argument regarding plaintiff's authority to transfer interest in an action "may form the basis of an affirmative defense or a challenge to Plaintiff as the real party in interest," defendants "failed to demonstrate how this implicates Plaintiff's standing under Article III").

Nonetheless, to the extent the Moving Defendants challenge the existence of "assignments that predate the filing of the Amended Complaint," (Doc. 835 at 4), and thus "whether the assignment effectively erased Plaintiff's 'personal stake' in the litigation such that it rendered the case moot for lack of subject matter jurisdiction,"

*Sas*, 2013 WL 12086638, at *3, Plaintiffs have provided evidence in the form of sworn declarations that the "SPEs intent of [loan repurchases] is that such transfer is inclusive of any and all assets and liabilities . . . including without limitation, all causes of action associated with such loans and underlying interests and/or rights" and that 647 "of the Relevant Contracts became delinquent on or before July 22, 2019. Thus, to the extent any of these loans were securitized, the Originators had already repurchased such loans pursuant to the above-described process before Wyndham filed the Amended Complaint." (Docs. 822-1 ¶ 30; 822-5 ¶ 7.)

Having considered the Moving Defendants' cited authority, and the Pandora Defendants' own contention that standing is determined as of the date of the operative complaint, the undersigned proceeds to determine whether Plaintiffs had Article III standing as of January 21, 2020, when the Amended Complaint was filed. (*See* Doc. 36.)

### B. Standing at the Time of Filing

The remaining question is whether Plaintiffs reacquired the loan contracts at issue such that they had standing at the time of the filing of the operative complaint. (*See* Doc. 802 at 16 ("Without proving that they owned the loan contracts before January 21, 2022[6] [sic] when the Complaint was filed, the following Plaintiffs' claims

---

[6] The Pandora Defendants reference January 21, 2022, as the date the Amended Complaint was filed. However, the Court assumes this was a typographical error, as a review of the docket reveals the Amended Complaint was filed on January 21, 2020, and that of the two documents filed on January 21, 2022, neither could be construed as a complaint.

fail for lack of standing . . .").)

Federal courts have jurisdiction only where there is a "case" or "controversy" within the meaning of Article III. *See Lujan*, 504 U.S. at 559–60. To establish the constitutional requirement of standing, a plaintiff must show an "injury in fact" that is (1) "concrete, particularized, and actual and imminent"; (2) fairly traceable to the conduct of the defendant; and (3) likely to be redressed by a court. *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560–61).

The crux of the Moving Defendants' argument appears to be that Plaintiffs cannot demonstrate the existence of an injury. (Docs. 800 at 15; 802 at 12–13.) While the Lawyer Defendants argue that there is no injury because Plaintiffs did not own the relevant loan contracts at the time of the wrongful conduct, the deficiency of which the undersigned addressed above, the Pandora Defendants contend that Plaintiffs "cannot establish standing to bring causes of action arising out of contracts they did not own at the time the Complaint was filed." (Doc. 802 at 13; *see also* Doc. 835 at 2.) Specifically, the Pandora Defendants state that if Plaintiffs "did not own the loan contracts at the time [sic] alleged wrongful conduct, Plaintiffs were not and could not have been injured, therefore have no standing, and all causes of action fail." (*Id.* at 3–4; *see also* Doc. 835 at 3–4.) Following the logic of this argument, if Plaintiffs were to allege that they owned the relevant loan contracts at the time of the filing of the operative complaint, by their own formulation, the Pandora Defendants' standing objections should be denied. And this is precisely what Plaintiffs allege.

In their response, Plaintiffs' unequivocally state they have standing as to the instant action. Therein, Plaintiffs describe in detail the securitization process that the Moving Defendants characterize as proof of Plaintiffs' lack of standing. (Doc. 822 at 6–9.) Plaintiffs explain "[o]nce any particular loan reaches 120 days of delinquency, that loan is repurchased . . . on behalf of the relevant original developer (here, the Originators) from the applicable SPE and all rights are assigned back from the SPE to the original developer." (Doc. 822 at 6.) Thus, "within a maximum of 182 days of delinquency . . . any of the securitized Relevant Contracts would have been returned to the Originators." (*Id.* at 7.) Plaintiffs state that, assuming each of the relevant loan contracts was securitized, of the 934 contracts, 647 "were back in the Originators' possession by the time of the Amended Complaint." (*Id.* at 16; Doc. 822-1 ¶ 30.)

On the other hand, as Plaintiffs highlight, the Moving Defendants fail to offer any evidence that Plaintiffs lack standing as to the contracts at issue. Despite the Lawyer Defendants' contention that "Wyndham Plaintiffs did not own any of the loan contracts at the time the loans became delinquent and that the unpaid principal balances were not owed to Plaintiffs," the Lawyer Defendants also admit that they "cannot provide the Court with assignments demonstrating that Plaintiffs have no standing to assert these claims." (Doc. 800 at 3, 15.) Likewise, the Pandora Defendants state "Plaintiffs have no evidence that any Plaintiff owned the loans at the time the Complaint was filed," yet similarly present no evidence in support of this claim. (Doc. 802 at 18–19.) The Moving Defendants refer generally to a practice of securitization, yet fail to make a single argument that would bolster their claims as to the only issue

that matters: the specific loan contracts at issue in this case. Against those unsupported, generalized allegations, Plaintiffs have presented evidence that they did, in fact, own 647 of the relevant loan contracts at the time the Amended Complaint was filed. (*See* Docs. 822-1; 822-5.) Plaintiffs also cite numerous "Jacada" and "Blackbird" records produced to the opposing parties that purportedly reveal that the originating party owned each of the relevant loans and the date on which they were re-acquired. (*See* Doc. 822 at 8.)

The Moving Defendants have argued that it is Plaintiffs' burden to prove the facts needed to demonstrate standing. (Docs. 800 at 3; 802 at 12.) In turn, Plaintiffs have established a clear, factual basis to support the existence of standing. While questions may remain regarding Plaintiffs' entitlement to damages and the potential amount of such damages,[7] the undersigned declines to address any issue beyond that of standing.

## IV.  RECOMMENDATION

Upon consideration of the foregoing, I respectfully recommend that the Court **DENY** both the Lawyer Defendants' Motion to Dismiss (Doc. 800) and the Pandora Defendants' Motion to Dismiss (Doc. 802).

---

[7] For example, the bulk of the Lawyer Defendants' reply deals with Plaintiffs' ability to recover damages. The Lawyer Defendants state, "Plaintiffs have failed to meet their burden to establish standing to assert <u>their claims of damages</u>," and "Plaintiffs' new claim that they can recover <u>damages incurred by the third parties because those claims have been assigned to Plaintiffs was never raised</u> . . . ." (Doc. 834 at 1, 5) (emphasis in original).

## NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on August 11, 2022.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE