## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**WYNDHAM VACATION OWNERSHIP, INC., WYNDHAM VACATION RESORTS, INC., WYNDHAM RESORT DEVELOPMENT CORPORATION, SHELL VACATIONS, LLC, SVC-AMERICANA, LLC, and SVC-HAWAII, LLC,**

         **Plaintiffs,**

**v.**                                       **Case No: 6:19-cv-1908-WWB-EJK**

**SLATTERY, SOBEL & DECAMP, LLP, DEL MAR LAW GROUP, LLP, CARLSBAD LAW GROUP, LLP, JL "SEAN" SLATTERY, PANDORA MARKETING, LLC, PANDORA SERVICING, LLC, INTERMARKETING MEDIA, LLC, KENNETH EDDY, WILLIAM WILSON, and RICH FOLK,**

         **Defendants.**

### AMENDED REPORT AND RECOMMENDATION[1]

Before the Court are Plaintiffs' Motions for Default Judgment and Permanent Injunction Against Telemarketing Defendants (the "Motions"). (Docs. 874, 875, S-919, S-920.) Defendants have responded in opposition. (Docs. 936.) Additionally, on

---

[1] This Report and Recommendation is amended only to correct the two scrivener's errors identified by Defendants (Doc. 1063).

August 9, 2023, the Court held an evidentiary hearing on both motions ("Evidentiary Hearing"). (Doc. 1043.) Thus, the Motions are ripe for review. Upon consideration, I respectfully recommend that the Motion for Permanent Injunction Order against Telemarketing Defendants (Doc. 874) be granted and that the Corrected Motion for Default Judgment (Doc. 875) be granted in part and denied in part.

## I.    BACKGROUND[2]

Plaintiffs ("Wyndham") allege that Pandora Marketing, LLC; Pandora Services, LLC; William Wilson; Rich Folk;[3] and Intermarketing Media, LLC (collectively, the "Telemarketers") were part of a conspiracy to mislead and defraud Wyndham Owners, through false and misleading advertisements, to default on their timeshares with Wyndham. (Doc. 36 ¶¶ 85, 93 –95.) As a consequence, the Wyndham Owners' accounts went into foreclosure. (*Id.* ¶ 93.)

Plaintiffs instituted this action on October 4, 2019. (Doc. 1.) On February 11, 2020, Plaintiff filed an Amended Complaint (Doc. 36), which sets forth claims against the Telemarketers for the following causes of action: false advertising, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1) (Count I); tortious interference with contractual relations (Count IV); violation of Florida's Deceptive and Unfair Trade

---

[2] "All well-pleaded allegations of fact are deemed admitted upon entry of default." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[3] William Wilson and Rich Folk are former Wyndham employees that established Pandora Marketing and Pandora Servicing. (Doc. 36 ¶ 52, 53.)

Practices Act ("FDUTPA"), Fla. Stat. § 501.204(1) (Count V); and civil conspiracy to commit tortious interference with contractual relations (Count VI).[4]

On July 20, 2021, the Telemarketers filed their Answer (Docs. 497, 498), which was subsequently stricken due to a series of extraordinary discovery violations. (Doc. 689.) Thereafter, Plaintiffs moved for entry of a clerk's default (Doc. 550), which the Court granted on January 18, 2021. (Doc. 689.) In the instant Motion, Plaintiffs seek entry of a default judgment as to liability against the Telemarketers on the Counts brought against them, as well as the entry of a permanent injunction. (Docs. 874, 875.)

## II.   STANDARD

A defaulted defendant is deemed to admit only the plaintiff's well-pleaded allegations of fact. *See Tyco Fire & Sec. LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (unpublished). "Thus, before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.* (emphasis in original). "Even in the default judgment context, '[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters.'" *Ghost Control, LLC v. Gate1Access LLC*, No. 5:20-cv-288-Oc-37PRL, 2020 WL 8309717, at *2 (M.D. Fla. Oct. 16, 2020) (quoting *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003)); *see also Adolph Coors Co. v. Movement Against Racism and the Klan*,

---

[4]  Counts II and III were not asserted against the Telemarketers. (Doc. 36 at 39–42.)

777 F.3d 1538, 1544 (11th Cir. 1985) (explaining that there must be an adequate basis in the record for damages awarded on default judgment).

## III.   DISCUSSION

### A. Default Judgment

Before granting a default judgment, the Court must review subject matter jurisdiction, personal jurisdiction, venue, and whether Plaintiffs state a claim for which they are entitled relief. The Court previously determined these issues in its Order denying Defendants' Motion to Dismiss. (*See* Doc. 488.) Therefore, the undersigned need not review these issues again.

### B. Monetary Damages

In their Motion for Default Judgment, Plaintiffs move for monetary damages, composed of actual damages and disgorgement of profits. (Docs. 875, S-920.) On August 9, 2023, the undersigned held an evidentiary hearing related to damages and injunctive relief. (Doc. 1021.) Based on the briefing and the evidence presented at the hearing, the undersigned recommends awarding $16,231,197.88 in disgorgement of profits.

#### 1. Standing

The Telemarketers argue that Plaintiffs have failed to establish standing to pursue the claimed damages. (*See* Doc. 936 at 32–33.) However, the undersigned recommends that the Court find that Plaintiffs have standing to pursue actual and disgorgement damages against the Telemarketers for the same reasons that the Court

previously found that Plaintiffs had standing to pursue the same types of damages against the remaining defendants. (Doc. 1034 at 8–9.)

## 2. Actual Damages

Plaintiffs seek $33,014,788.45 in actual damages pursuant to their Lanham Act claim. (*See* Doc. 1053.) Plaintiffs derive this number from the cumulative outstanding principal loan balances of the contracts that were breached due to the Telemarketers' false and misleading advertisements. (Doc. 875 at 10.) In support of their request, Plaintiffs submitted evidence, as to each contract, that included an owner's (1) delinquency date, (2) outstanding principal balance, and (3) first known date of contact with the Defendants. (Hr'g Ex. P-2665.)

### i. *Proximate Causation*

The Telemarketers contend that Plaintiffs have not established that the Telemarketers' conduct was the proximate cause of Plaintiffs' alleged injury. (Doc. 936 at 11–17.) *See Lexmark Intern., v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) ("[I]n all cases of loss, we are to attribute it to the proximate cause, and not to any remote cause." (internal quotations omitted)). In Lanham Act cases, a plaintiff must demonstrate "that its economic or reputation injury flows directly from the deception wrought by the defendant's advertising." *Id.* at 133. The Telemarketers argue that Plaintiffs have failed to demonstrate, in the Amended Complaint or otherwise, that the Wyndham Owners withheld payment due specifically to the Telemarketers' conduct. (Doc. 1055 at 4.) Plaintiffs argue in response that, "[b]y virtue of their default, the defendants admit that they provided false and misleading

representations and deceptive conduct that caused the plaintiff to sustain damages."
*Ghost Controls, LLC*, 2020 WL 8309717, at *3.

Despite the Telemarketers' default, the Court must still determine whether there is a legitimate basis to award actual damages. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) (finding that the court has an obligation to ensure a legitimate basis for damages and that damages are not awarded solely because of defendant's failure to respond to a discovery request). Plaintiffs assert that the timeshare owners stopped making payments following, and as a result of, the Telemarketers contacting them. (Hr'g Ex. P-2665.) However, their evidence on this point is deficient.

The deficiency is illustrated by comparing the evidence presented here with the court's findings in *Bluegreen Vacations Unlimited, Inc. v. Timeshare Laws. P.A.*, No. 20-24681-Civ-Scola, 2023 U.S. Dist. LEXIS 76539 (S.D. Fla. May 2, 2023). In *Bluegreen Vacations Unlimited*, the court cited individual owner deposition testimony as direct evidence to show that the owners would not have ceased payment on their own. *See, e.g.*, *Bluegreen Vacations Unlimited, Inc.*, 2023 U.S. Dist. LEXIS 76539, at *20. ("Q. It wasn't until after you hired Timeshare Compliance that you decided to stop paying Bluegreen? A. Yes . . . . [w]e had wanted to do that for some time, but we didn't have the confidence that we would be able to deal with it ourselves in getting the cancellation." (internal quotations omitted)); *id.* at *23 ("Bluegreen provides deposition testimony from fifteen owners who stated that they stopped making payments *because of* the Marketing Defendants' statements to them in sales

presentations."); *see also Westgate Resorts, Ltd. v. Sussman*, 387 F. Supp. 3d 1318, 1362–63 (M.D. Fla. 2019) (denying summary judgment on tortious interference claim because similar spreadsheet evidence had "gaping holes of 'but for' causation that no amount of advocacy or inferential leap could fill").

In this case, to establish proximate cause, Plaintiffs rely on a spreadsheet that shows the Wyndham Owners' nonpayment history in relation to the time that elapsed between Defendants' contact with the owners and the delinquency date. (Hr'g Ex. P-2665.) However, this evidence is merely circumstantial at best.[5] There is no direct evidence contained in the Amended Complaint, or cited in the hearing exhibits, that shows that specific Wyndham Owners stopped making payments because of solicitation from the Telemarketers. Instead, the Amended Complaint contains general assertions that the Telemarketers solicited Wyndham Owners and that the solicitation caused them to breach their contracts. (Doc. 36 at ¶¶ 201–207 ("Defendants have successfully solicited Wyndham Owners and caused or induced them to breach . . . or terminate their contractual relationships with Plaintiffs . . . . by persuading them to hire Defendants to help 'exit' . . . their [t]imeshare [c]ontracts . . . [and] also procures breaches by directly instructing Wyndham Owners to stop paying

---

[5] Plaintiffs cite a case from the Western District of Missouri in which the court awarded actual damages against a defaulted defendant timeshare exit company based on spreadsheet evidence similar to that presented here. *See BP Diamond Resorts Holdings, LLC v. Diamond View Social House, LLC*, 6:17-cv-3208-BP (W.D. M.O. Mar. 18, 2019). However, the Missouri court did not conduct a proximate cause analysis, which is required in this circuit pursuant to *Anheuser Busch*. (*Id.*) Thus, the undersigned finds the cited case to be unpersuasive.

their timeshare loans and maintenance fees . . . or engaging in fraudulent transfers.").)

The general assertions contained in the Amended Complaint, even when coupled with the inferences Plaintiffs draw from the spreadsheet—evidence that, again, is circumstantial at best—are not enough to establish that the Telemarketers are the proximate cause of each specific Wyndham Owner's failure to pay. Thus, Plaintiffs' inference of causation falls far short of the type of evidence necessary to provide a "legitimate basis" to award actual damages. As such, the undersigned cannot find that the Telemarketers were the proximate cause of Plaintiffs' injury as to each of the Wyndham Owners at issue. Without such evidence, the undersigned cannot recommend that Plaintiffs receive an award of actual damages.

### 3. Disgorgement of Profits

As the Court has previously found:

> If a party establishes a false advertising violation under the Lanham Act, the party "shall be entitled, . . . subject to the principles of equity, to recover . . . defendant's profits[.] *TB Food USA, LLC v. Am. Mariculture, Inc.*, No. 2:17-cv-9-FtM-29NPM, 2022 WL 3028061, at *18 (M.D. Fla. Aug. 1, 2022) (citing 15 U.S.C. § 1117(a)). As long as the amount of profits is not speculative, the Lanham Act permits the disgorgement of profits without proof of particular financial harm. *See Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1353 (11th Cir. 2019).

(Doc. 1034 at 12.) Plaintiffs seek $16,231,197.88 in total for disgorgement of profits pursuant to their Lanham Act claim. (Doc. 1053 at 3.) They have provided evidence that the Pandora Marketing defendants received $12,348,946.85 from Wyndham Owners and that Intermarketing Media received $3,882,251.03 from Wyndham Owners. (*Id.*; Hr'g Exs. P-875-E and P-875-F.)

A disgorgement award is one for *profits*; therefore, the Telemarketers may present evidence of expenses that should be deducted from their revenues in order to determine their profits. *See SEC. v. Complete Bus. Sols. Grp., Inc.*, No. 9:20-cv-81205-RAR, 2023 WL 4196949, at *2 (S.D. Fla. June 27, 2023) ("Courts must restrict disgorgement awards to "net profits from wrongdoing after deducting legitimate expenses.") (citing *Liu v. SEC*, 140 S. Ct. 1936, 1946 (2020)). At the Evidentiary Hearing, the Telemarketers presented Irene Desales to testify as to their expenses. (Doc. 1043; Hr'g Tr. vol. 2 at 29–45.) Plaintiffs challenge all of the evidence introduced through Desales.

### i.   Witness Disclosure

Federal Rule of Civil Procedure 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Plaintiffs challenge Desales's testimony because the Telemarketers failed to disclose Desales as an "individual likely to have discoverable information" pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i). (Doc. 1053 at 5.) The Telemarketers do not dispute that there was a "failure to disclose Ms. Desales." (Doc. 1055 at 15.)

The nondisclosing party has the burden to establish that the failure to disclose was substantially justified or harmless. *Mitchell v. Ford Motor Co.*, 318 Fed App'x 821, 824 (11th Cir. 2009) (per curiam) (quotations omitted) Thus, the Court must determine whether the Telemarketers have met their burden of showing that the failure was

substantially justified or harmless. *Maddow v. Procter & Gamble Co.*, 107 F. 3d 846, 853 (11th Cir. 1997 ("Substantially justified means that reasonable people could differ as to the appropriateness of the contested action." (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988))).

Plaintiffs contend that the Telemarketers' failure to disclose Desales was not substantially justified because "Pandora has known since January 2020 . . . that Wyndham is seeking disgorgement and that cost evidence may be relevant." (Doc. 1053 at 5.) Plaintiffs claim they were prejudiced because "Wyndham only learned of Ms. Desales' expected testimony days before the Evidentiary Hearing and did not know the subject of her testimony until it began." (*Id.*) In response, the Telemarketers maintain that their use of Desales was substantially justified because "Defendants initially believed that Scott Grey (who was disclosed as a witness) would testify regarding these topics, Mr. Grey was not available to testify on one week's notice, and the Court twice denied Defendants' motion to continue the hearing." (Doc. 1055 at 15.) The Telemarketers contend that the failure to disclose Desales was harmless because "Mr. Grey's testimony would not have materially differed from that given by Ms. Desales, who reports to Mr. Grey." (*Id.*)

First, the undersigned rejects the argument that using Desales instead of Grey was justified because of the "one week's notice" for the evidentiary hearing and the denials of the motions to continue. The August 9, 2023, hearing was noticed on July 27, 2023 (Doc. 1021), which provided 13 days of notice to the parties. Moreover, neither of Defendants' motions to continue the hearing reference a conflict with Grey.

(*See* Docs. 1023 and 1027.) Indeed, the first motion noted that Grey would be a witness. (Doc. 1023 at 4.) Thus, the Telemarketers cannot rely on denials of extensions of time to justify Grey's absence when that issue was never presented to the Court, and they fail to meet their burden to prove that their nondisclosure was substantially justified.

As to prejudice, it is clear that Plaintiffs were not able to depose Desales and otherwise had no notice as to the subject of her testimony. While the Telemarketers contend that the testimony did not differ materially from what Grey would have testified about, they do not provide deposition testimony or any other evidence to support that claim. Considering the fact of Desales's non-disclosure and the clear direction of Rule 26(a) against the Telemarketers' bare and unsupported representation that Desales's testimony was the same as Grey's would have been, the undersigned finds that the balance weighs in favor of a finding of prejudice.

Since Plaintiffs were prejudiced by the failure to disclose Desales, and the failure was not substantially justified, the undersigned finds that Desales's testimony, including all exhibits introduced through Desales, should be excluded pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i). The Telemarketers did not present evidence of their expenses through any other witnesses[6]; therefore, the undersigned finds that Plaintiffs are entitled to the full $16,231,197.88 in disgorgement damages

---

[6] While some of the information that Desales testified about can be found in the Telemarketers' briefing exhibits, the undersigned declines to circumvent Federal Rule of Civil Procedure 26 to consider them.

that they seek.

### C. Injunctive Relief

Plaintiffs argue that they are entitled to a permanent injunction against the Telemarketers pursuant to the Lanham Act, FDUPTA, tortious inference, and conspiracy claims. (Doc. 874 at 19–20.)    Section 1116(a) of the Lanham Act permits courts to issue an injunction "to prevent a violation under subsection (a) . . . of section 1125 of this title." 15 U.S.C. § 1116(a). Since Plaintiffs have demonstrated a violation of Section 1125(a), they are entitled to injunctive relief under the Lanham Act. For a permanent injunction, Plaintiffs must show that "1) [they] succeeded on the merits; 2) irreparable injury will be suffered unless the injunction issues; 3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and 4) if issued, the injunction would not be adverse to the public interest." *Wyndham Vacation Ownership, Inc. v. Transfer Grp., LLC*, No. 6:19-cv-756-CEM-GJK, 2021 U.S. Dist. LEXIS 83617, at *13 (M.D. Fla. Apr. 30, 2021) (citing *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004)). A default is per se satisfaction of the first element. *Virgin Records Am., Inc. v. Courson*, No. 3:07-cv-195-VMC-MCR, 2007 WL 3012372, *2 (M.D. Fla. Oct. 12, 2007) (citing *Sony Music Entm't v. Global Arts Prods.*, 45 F. Supp. 2d 1345, 1347 (S.D. Fla. 1999)).

Here, the Court has entered an order of default against the Telemarketers, so Plaintiffs have succeeded on the merits of their claims against them. The Telemarketers have caused irreparable harm to Plaintiffs by using false and misleading advertising, and charging fees, to entice Wyndham Owners into wrongfully breaching their

timeshare contracts. (Doc. 36 ¶¶ 175, 220, 233.) As with the Lawyer Defendants, absent injunctive relief, the Telemarketers' activity will be an ongoing concern, and these false advertisements could continue. (*See* Doc. 1034 at 17.)

Accordingly, the undersigned finds that Plaintiffs' hardship outweighs any hardship to the Telemarketers, and a permanent injunction would serve the public interest by preventing harm to consumers. Thus, I recommend that the Court enter the Permanent Injunction Order (Doc. 1053-1); *see also* (Doc. 1034 at 12, 15 (finding a permanent injunction is warranted based on Counts II and VI of the Complaint)); *Wyndham Vacation Ownership, Inc. v. Bonds*, No. 6:20-cv-428-CEM-EJK, 2021 WL 4948147, at *6 (M.D. Fla. July 27, 2021) (recommending that the Court enter Wyndham's proposed permanent injunction against defendant), *report and recommendation adopted*, 2021 WL 8895116 (M.D. Fla. Aug. 13, 2021); *Wyndham Vacation Ownership, Inc. v. Transfer Grp. LLC*, No. 19-cv-756, slip. op. at 2 (M.D. Fla. May 24, 2021) (adopting Wyndham's proposed permanent injunction against a separate timeshare exit group).

## IV.    RECOMMENDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** Plaintiffs' Motion for Permanent Injunction Order Against Telemarketing Defendants (Docs. 874, S-919) and **ENTER** the Permanent Injunction Order. (Doc. 1053-1.)

2. **GRANT IN PART AND DENY IN PART** Plaintiffs' Corrected Motion for Default Judgment Against Telemarketing Defendants (Docs. 875, S-920) as follows:

   a. **DENY** Plaintiffs' request for an award of actual damages.

   b. **GRANT** Plaintiffs' request for disgorgement damages, and **ENTER** a default judgment against the Telemarketers as to Counts I, IV, V, and VI of the Amended Complaint (Doc. 36), finding that Plaintiffs are entitled to $16,231,197.88 in disgorgement damages.

## NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on October 10, 2023.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE