## UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

| | |
|---|---|
| Wyndham Vacation Ownership, Inc. *et al.,* Plaintiffs, <br> v. <br> Slattery, Sobel & Decamp, LLP, *et al.,* Defendants. | Case No.: 6:19-CV-01908-WWEB-EKJ |

### PANDORA DEFENDANTS' OBJECTIONS TO AMENDED R&R [DE 1065]

Pandora Defendants, pursuant to Fed. R. Civ. P. 72(a), 28 U.S.C. § 636(b)(1), and L.R. 6.02(a), file this Objection to the Amended Report and Recommendation of the Honorable Judge Embry Kidd [DE 1065] (the "R&R").[1]

Lanham Act remedies are explicitly "subject to the principles of equity." Mag. J. Kidd found that Plaintiffs failed to prove causation of any damages under any of the four causes of action. Yet the R&R recommended a staggering $16.2 million in disgorged gross sales with no reduction for Defendants' expenses and no attempt to determine net profits. The case law is clear that a business-killing award of all gross sales contravenes the Lanham Act's restriction that any award must constitute compensation and not a penalty. This principle also confines the Court's discretion to award disgorgement at all in a non-comparative false advertising case such as this one; especially an award so grossly disproportionate to purported and unproven harm. The R&R's compounded failures to apply a reasonable estimate of profit margin (including procedurally and legally erroneous exclusion of witness testimony and QuickBooks business records, evidence properly before the Court) resulted in an inequitable recommended award that no court sitting in

---

[1] Defendants' motion for reconsideration, DE 1067, on the basis of dispositive evidence that Ms. Dasalla was previously disclosed in compliance with Rule 26, both during discovery and on Plaintiffs' witness list, is pending before the Court. Defendants reserve the right to respond to Mag. J. Kidd's decision on DE 1067.

equity can countenance.

I.   **The Award of $16,231,197.88 in Gross Profits is Punitive and not Compensatory in Violation of the Lanham Act**

The Lanham Act explicitly provides that awards of defendant's profits are "subject to the principles of equity," and requires that any disgorgement sum "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a). "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id.* But there must always be an objective basis in the record cited by the Court in making such a determination. Here, in default, that record is circumscribed by the complaint and record evidence of plaintiffs' damages, which the Court determined to be zero. The astronomical disgorgement amount recommended by the R&R— $16,231,197.88, representing Defendants' gross sales and not accounting for a nearly 95% expense margin — is grossly inequitable, does not come close to reflecting Defendants' true profits, does not constitute compensation, and instead imposes a business-ending penalty, in contravention of the Lanham Act.

Even when a defendant completely fails to respond to a litigation, including a failure to respond to a plaintiffs' damages request, the "Court is bound by the Lanham Act to produce results that are not punitive in nature." *Choice Hotels Int'l, Inc. v. S&V Enters*, 2018 U.S. Dist. LEXIS 229599, at *6 (N.D. Fla. Mar. 29, 2018). Disgorgement based on a defendant's gross sales without "tak[ing] into account the actual profit margin would almost certainly penalize the defendant instead of compensating the plaintiff." *Id.* at *7-8. (internal citations omitted). When courts have been faced with a complete void of information regarding a defendant's costs, they have ordered the ***plaintiff*** to provide an

2

estimated profit margin for defendants, either by relying on the plaintiff's own profit margin if the plaintiff and defendant are in the same line of business or relying on profit margins of similar businesses. *Id. See also Choice Hotels v. Fisher*, No. 2:13-CV-23, 2015 U.S. Dist. LEXIS 189566, 2015 WL 12748029, at *7 (N.D. W. Va. April 1, 2015). Only then are courts satisfied that the result achieved was "just" and permitted by the Lanham Act. *Id.; Choice Hotels*, 2018 U.S. Dist. LEXIS 229599, at *8.

In a recent case in this district (decided after the parties' 8/23/23 post-hearing briefs), *Deltona Transformer Corp. v. Noco C*o., 2023 U.S. Dist. LEXIS 174942, at *17-18 (M.D. Fla. Sep. 29, 2023), J. Carlos Mendoza explained that the principles of equity governing disgorgement under the Lanham Act require adjustment to arrive at a reasonable profit margin, even when specific cost deductions were not provided. *Id.* ("[T]he Court must also act within the principles of equity, and even though Defendant has not provided any specific cost deductions, clearly its gross sales numbers do not represent its profits"). To arrive at an equitable award, J. Mendoza relied on general testimony that the profit margin on sales was 35% and awarded 35% of gross sales. *Id.*

The Third Circuit Court of Appeals also spoke firmly and directly on this issue:

Covertech's argument seems to be that if a plaintiff makes a showing of gross sales—even industry-wide sales, not limited to the infringing product—and a defendant then fails to offer a rebuttal, it is within the district court's discretion to award as "actual profits" any dollar amount up to 100% of those gross sales. Covertech is mistaken.

A district court's discretion, wide as it may be, is not unbounded, **and a bare showing of gross sales is not sufficient to fashion an equitable award without some anchor in the record to support a reasonable estimation of actual profits**. Indeed, Covertech's approach would render equitable considerations—and by extension, our review for abuse of discretion—a nullity. **We will not interpret the Lanham Act's statutory burden-shifting mechanism**

**in such a nonsensical manner**. *See In re Kaiser Aluminum Corp.*, 456 F.3d 328, 330 (3d Cir. 2006)…

…[W]here a district court endeavors to calculate damages under the Lanham Act on the basis of the defendant's actual profits, rather than awarding statutory damages, it must ground its estimate in the record—e.g., business records, credible witness testimony, expert testimony, or industry data—in order to pass muster as a reasonable estimate and an appropriate exercise of discretion. Conversely, where the court lacks a sound basis for extrapolating actual profits, it abuses its discretion by resorting to guesswork.

*Covertech. v. TVM Bldg.,* 855 F.3d 163, 177 (3d Cir. 2017) (emphasis added).

Case law is replete with examples of courts refusing to award gross profits, as such awards are impermissibly punitive and not compensatory. Instead, courts have used various methods of estimating actual net profits and usual costs.[2] The R&R thus erred by recommending that Defendants be punished in an Order to disgorge over $16.2 million in gross profits instead of recommending that Plaintiffs be compensated with an equitable

---

[2] *See, e.g., Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 176-77 (3d Cir. 2005) ("because [defendant] failed to meet his burden of proving costs and deductions, the District Court was forced to use an alternative method to estimate [defendant's] profits, and it was not error to rely on business manger's general testimony of 15-17% profit margin); *Sethness-Greenleaf, Inc. v. Green River Corp.*, 1995 U.S. Dist. LEXIS 13796, at *11-12 (N.D. Ill. Sept. 20, 1995) (rejecting entire gross profits as punitive because "there is no doubt that the usual costs were incurred selling the counterfeit [product]"); *Tulis v. Gordos N. Rest. Corp.* (*In re Gordos Rest. Corp.*), 643 B.R. 1, 45-46 (Bankr. S.D.N.Y. 2022) (despite defendant not carrying burden of proof to show all deductible costs, equity compelled court to reduce gross sales by costs it presumably incurred); *Muhler Co. v. Window World of N. Charleston LLC,* 2014 U.S. Dist. LEXIS 119895, at *17-18  (D.S.C. Aug. 28, 2014) (where defendant failed to appear or defend the litigation, Court refused to award gross profits, as a recovery "which does not take into account… profit margin, would almost certainly penalize [defendant] instead of compensating [plaintiff]," and instead applied plaintiff's profit margin to defendant's gross sales, an amount "just according to the circumstances of the case."); *see also* 5 McCarthy on Trademark § 30.66 (5th ed.) ("even where the infringer failed to produce evidence of either apportionment or cost deductions, to avoid a windfall to the mark owner, the court may award its own estimate of what is a fair recovery.")

amount of actual profits. Defendants' profits are: $650,789.50.

The R&R's error is compounded by failing to consider the evidence Defendants offered of their expenses, in the form of business records and testimony. Specifically, as detailed below, the Court was presented with but refused to consider Defendants' QuickBooks evidence and testimony of Irene Dasalla,[3] Pandora's head of finance and accounting, which would have guided the Court to an equitable award of actual profits. It would have been clear error for the Court to award gross profits *even in the absence of any evidence of profit margin*, *Choice Hotels*, 2018 U.S. Dist. LEXIS 229599, at *8; *Covertech*., 855 F.3d at 177*,* all the more so when the Court had before it business records and testimony establishing that profit margin.

## II. It was Error to Exclude Ms. Dasalla's Testimony

The R&R erred by excluding the testimony of Irene Dasalla, which was offered to aid the Court's understanding and assessment of Pandora's QuickBooks records, due to an alleged failure to identify her in Rule 26 disclosures. (R&R at 9-11). Contrary to opposing counsel's representations at the hearing, Ms. Dasalla was disclosed on many occasions to Plaintiffs during discovery and Plaintiffs themselves listed Dasalla on their witness list indicating Dasalla as "may call" at trial. *See* DE 1067-2-10.

Plaintiffs clearly knew of Dasalla and her possession of information relevant to the case because they listed her on their own witness list, exchanged in preparation of the joint pre-trial stipulation in the bench trial against the Lawyer Defendants. DE 1067-2 at 8. Other disclosures during discovery include:

- 30(b)(6) deposition of Catherine Tan, 8/30/21 (DE 1067-3) (Dasalla

---

[3] Ms. Dasalla's last name was spelled incorrectly ("Desales") in the hearing transcript and post-hearing briefing.

disclosed as Pandora's head of accounting and finance)

- Three references in Ms. Consalvo's March 6, 2021 deposition identifying her as the primary contact for payment of invoices to vendors. DE 1067-4.
- Appearance as the author, recipient and signatory on three separate deposition exhibits admitted in Ms. Consalvo's March 6, 2021 deposition.DE 1067-5, 1067-6, 1067-7.
- Identification in Tim Clark's declaration, filed on September 16, 2020 as DE 172-1 and also admitted at Mr. Clark's March 29, 2021 deposition DE1067-8.
- Identification as "VP, Finance and Operations" in an exhibit to Courland Llauger's March 25, 2021 deposition, in a document entitled "Analyst Compensation Structure." DE 1067-9.
- Identification in Pandora's response to Wyndham's Interrogatory No. 20 as a signatory on all financial accounts. DE1067-10.

Rule 26(e)(1)(A) requires a party to supplement disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." The Advisory Committee notes to Rule 26(e) state that there is "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, *as when a witness not previously disclosed is identified during the taking of a deposition.* Fed. R. Civ. P. 26(e), Advisory Committee's Notes to 1993 Amendment (emphasis added); *see also* 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2049.1 (3d ed. 2010) ("[T]here is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery.")

Given these disclosures, and Plaintiffs' own listing of Dasalla on their witness list, there was no basis to exclude her testimony. *Chadwick v. Bank of Am., N.A.*, 616 F. App'x 944, 948 (11th Cir. 2015) (although witness was not explicitly identified in discovery

disclosures, disclosure in discovery responses put party on notice that witness had relevant information, citing Advisory Committee Notes that a party has "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition"); *Wolfe v. Secretary*, 2012 U.S. Dist. LEXIS 183065, at *3 (M.D. Fla. Dec. 28, 2012) (citing Advisory Committee Notes to Rule 26(e) and refusing to exclude witness for nondisclosure on Rule 26 disclosures where witness was identified in deposition); *Sada v. City of Altamonte Springs,* 2010 U.S. Dist. LEXIS 159376, at *5 (M.D. Fla. Sep. 13, 2010) (where witnesses were mentioned in deposition, the witnesses were made known under Rule 26(e) and were not precluded from testifying); *Nix v. McMaster Carr Supply Co.,* 2018 U.S. Dist. LEXIS 222827, at *13 (N.D. Ga. Dec. 27, 2018) (same).

In addition, any failure to update was unquestionably harmless. In determining whether a failure to update a Rule 26 witness list is harmless, courts consider: (1) the importance of the testimony, (2) the reasons for the failure to disclose the witness earlier, and (3) the prejudice to the opposing party in allowing the witness to testify. *Cooley v. Great Southern Wood Preserving,* 138 Fed. Appx. 149, 161 (11th Cir. 2005). All three factors favor a finding of harmlessness: (1) the excluded testimony was critical to Defendants' contesting the $16.2M gross revenue claimed by Plaintiffs and providing the Court with the requisite figures to arrive at a non-punitive, compensatory award under the Lanham Act (*Choice Hotels*, 2018 U.S. Dist. LEXIS 229599, at *7-8); (2) there was no failure to disclose the witness earlier, as the witness was prominently disclosed multiples times during discovery and was listed on the Plaintiffs' own witness list; and (3) item 2

7

show there was no prejudice to Plaintiffs.

The R&R also procedurally erred in refusing to consider the testimony, when Plaintiffs never filed a motion to exclude, as instructed to by Mag. J. Kidd during the Hearing, and Defendants were never given an opportunity to respond.[4] The inclusion of the argument in Plaintiffs' briefing is not a substitute for a motion to exclude, particularly in light of the Court's specific instruction. To cure this error, Defendants request that the

---

[4] When counsel for Plaintiffs raised this disingenuous surprise objection claiming they had never heard of Dasalla until right before the Hearing, Mag. J. Kidd allowed the testimony, stating, "let's hear what they have to say, and then you can file a motion. **I'll let you file a motion if you think it's appropriate**." Hr'g Tr. Vol II, 28:11-13 (emphasis added). At the end of the hearing, Mag. J. Kidd permitted each side 15 pages of post-hearing briefing, due simultaneously. Plaintiffs did not make any motion to exclude witness testimony of Ms. Dasalla or Pandora's general counsel, Katherine Ferro, despite Mag. J. Kidd's invitation. Consequently, Defendants were not given the required opportunity of fourteen days to respond to the motion to exclude pursuant to L.R. 3.01. Had Defendants been given the requisite fourteen days to respond to the putative motion, they may have thought to conduct additional searches, including using the correct spelling of witness's last name ("Dasalla" instead of "Desales" incorrectly recorded in the hearing transcript), uncovering the facts they now present to correct the record.

Pandora Defendants, two small businesses, are represented by a small team of attorneys who appeared in this case after discovery was complete. Defendants moved to extend the evidentiary hearing because of their preparation of the defense in the trial against Pandora the same month, *Bluegreen Vacations Unlimited, Inc. v. Timeshare Lawyers, P.A.,* No. 1:20-CV-24681 (S.D. Fla.) ("Bluegreen"), as their limited resources were spread thin. DE 1023 at 2, 4. When that motion was denied, Defendants' counsel requested that at least post-trial briefing be due after the *Bluegreen* trial. Hr'g Tr. 83:8-11 ("Your Honor, could you -- could you give us three weeks so I can get through my bench trial and at least have a week just to turn to this entirely?"). That request was also denied; briefing was set to be filed on August, 23 — in the middle of the *Bluegreen* trial. The limited attorney resources were devoted to canvassing voluminous evidence and substantively defending against $33 million dollars in damages, $16.2 million dollars in disgorgement, and a business-ending injunction.

Because Plaintiffs made no motion to exclude, despite Mag. J. Kidd's invitation, Defendants understood that Plaintiffs were not seeking to exclude the evidence. Defendants nevertheless devoted one of their 15 pages to address the issue in an abundance of caution. However, because no motion to exclude was made, Defendants were not on notice to dispute the requested exclusion and did not have an opportunity to research the claims of non-disclosure and be properly heard on the matter.

Court either admit and consider the testimony and QuickBooks evidence, in light of the disclosure of Dasalla during discovery and on plaintiffs' witness list, or order separate briefing on a properly filed motion to exclude.

In addition, Rule 37(c)(1) may not apply in the context of a damages hearing on default. A Rule 55 damages hearing is held when a defendant is defaulted for failure to answer or as a sanction for discovery failures. The defaulted defendant is given an opportunity to be heard so that the Court may ensure that "there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). Even those defendants who have provided *no* information during discovery are afforded the opportunity to contest the damages claimed, without concern for prejudice to plaintiff of undisclosed witnesses. *See, e.g., CrossFit, Inc. v. Nat'L Strength & Conditioning Ass'n* 2019 U.S. Dist. LEXIS 209319, at *60 (S.D. Cal. Dec. 4, 2019) (denying request for evidentiary sanctions at damages hearing because the weight of authority supported a defaulted defendant's right to contest damages by introducing its own evidence).[5] Thus, even had Dasalla not been disclosed within the meaning of Rule

---

[5] *See also Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.,* 226 F. Supp. 3d 1141, 1147 (D. Or. 2016) ("[C]ourts generally agree that a defaulting party has the right to participate in such a hearing… [S]he may cross-examine the opposing witnesses and introduce evidence on [her] own behalf in mitigation of the damages."), citing *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974) (concluding that exclusion of the defendant's evidence was proper because it went to liability rather than damages); *Skytec, Inc. v. Logistic Sys.*, 2018 U.S. Dist. LEXIS 156633, at *18-19 (D.P.R. Sep. 12, 2018) (party defaulted for discovery failures was permitted to "introduce evidence controverting the amount of damages" at R.55 hearing). Plaintiffs will likely cite to *In Glob. Digit. Sols., Inc. v. Metalurgica*, No. 21-10716, 2022 U.S. App. LEXIS 30824, at *3-5 (11th Cir. Nov. 7, 2022), **a case which does not deal with disgorgement under the Lanham Act.** In that case, the Eleventh Circuit approved of the exclusion of defendant's expert witness proffered to challenge plaintiff's expert witness on damages because defendant did not provide an expert report as required by Rule 26(a)(2), and

26(e), it would have been error to exclude her testimony. But she was.

Even if Rule 37(c)(1) applies in a default damages hearing, the R&R erred by not applying this Circuit's factors to determine whether to exclude an undisclosed witness: (1) explanation for the failure to disclose the witness, (2) importance of the testimony, and (3) prejudice to the opposing party if the witness had been allowed to testify. *Sabal Trail Transmission, LLC v. Lasseter*, 823 F. App'x 914, 919 (11th Cir. 2020).

Each factor favors non-exclusion. *First*, there was no failure to disclose, as the witness was prominently disclosed many times during discovery and was listed on the Plaintiffs' own witness list. *Second*, the evidence of costs and deductions, or profit margin, was critically necessary to defend against an improper windfall award. In fact, when a similar objection was made by Plaintiffs' counsel, Shutts & Bowen, in a similar timeshare case, *Bluegreen*, arguing late production and prejudice, Judge Scola overruled the objection and admitted the challenged QuickBooks records into evidence, recognizing that it was the only evidence from either side of net monies received — an issue that <u>had</u>

---

also of the exclusion of evidence that was the subject of the plaintiff's discovery requests to which defendant failed to respond despite court orders. Those exclusions are a far cry from the R&R exclusion in the present case. The failure to provide an expert report clearly prejudices a party from effective examination. And the evidence sought to be introduced in that case was actively withheld throughout the litigation, in violation of a court order to compel, prejudicing the plaintiff's damages calculation in the first place. In this case, however, the QuickBooks records were produced earlier, and were before the Court since November 2022. (DE 936-27 and 936-28). The excluded testimony merely explained updated records which were self-explanatory and provided a greater level of detail. Irene Dasalla was not an expert; rather an employee who supervised Pandora's finances and accounting. She was disclosed in the deposition of Pandora's corporate deposition testimony, and reported to the CFO, Scott Grey, an individual who was disclosed on the Rule 26 witness list. Importantly, she was disclosed on Plaintiffs' trial witness list on 1/14/22.

to be resolved to determine disgorgement. *See Bluegreen,* Doc. No. 555 Trial Tr. Vol III., at 161:10 – 162:6. *Third*, Plaintiffs were not prejudiced by any failure to update Rule 26 disclosures to include as a witness, as per Rule 26e, Plaintiffs were aware of Dasalla.

### III.    It was Error to Ignore Evidence of Expenses in the Record

The R&R further erred by declining to consider QuickBooks record evidence before the Court. Hearing exhibit MD-63 (updated QuickBooks records) and Defendants' briefing exhibits, DE-936-27 and 936-28 (QuickBooks records). These QuickBooks records stand on their own and do not require a sponsoring witness. *See SEC v. Complete Bus. Sols. Grp., Inc.*, No. 20-CV-81205-RAR, 2022 U.S. Dist. LEXIS 194341, at *34-36 (S.D. Fla. Oct. 24, 2022) (relying on "Defendant's profit and loss statement, based in the QuickBooks records, which provides an itemized list of legitimate business expenses," and referencing the exhibit attached to Defendants' responsive briefing on disgorgement, the Court deducted $54 million in legitimate business expenses).

There is no "circumvention" of the Rules of Civ. Pro. (*see* R&R at 11, fn. 5) in a Court's consideration of evidence properly before it, even if such evidence is *also* the subject of an excludable witness's testimony. It was error to ignore the briefing exhibits, and even more so, where the Court's order in advance of the Hearing encouraged parties to "rely upon their written submissions to the maximum extent possible." DE 1025. Defendants adopt and incorporate Intermarketing's concurrently filed objections regarding the erroneous failure to consider this evidence.  This Court should apply the 5.27% profit margin evidenced in Ex. MD-63 to the total Pandora sales of $12,348,946.85 ($650,789.50).

### IV.    It was Error to award an Amount Grossly Disproportionate to Harm

The R&R also erred because the disgorgement amount recommended is so grossly disproportionate to the harm that it violates the equitable and non-excessive mandate of §1117(a). Calculation of disgorgement "should not produce … a gross disconnect between harm and recovery." *KEG Techs., Inc. v. Laimer*, 436 F. Supp. 2d 1364, 1373 (N.D. Ga. 2006). Defendants adopt and incorporate Intermarketing's concurrently filed objections regarding this error.

### V.     It was Error to Award Any Disgorgement in Non-Comparative False Advertising Case

The R&R erred in its award of disgorged profits altogether, where there is no correlation between Defendants' profits and any purported (unproved) damage to Plaintiffs. Defendants adopt and incorporate Intermarketing's concurrently filed objections regarding this error and incorporate prior arguments at DE 1055, p. 10-11.

### VI.     Error to Award Disgorgement When Wyndham Acted Inequitably

Defendants adopt and incorporate Intermarketing's concurrently filed objections regarding this error.

### VII.     It was Error to Issue an Overbroad Injunction

The R&R erred in adopting Wyndham's proposed injunction, which went far beyond the conduct complained of. *Kaimowitz v. Orlando, Fla.,* 122 F.3d 41, 43 (11th Cir. 1997); *Pierce Mfg. v. E-One,* Inc., 2022 U.S. Dist. LEXIS 28107 at *4 (M.D. Fla. Feb. 16, 2022) ("an injunction cannot impose unnecessary restraints on lawful activity")**.**

The recommended injunction enjoins Defendants from *lawful* activities including:

- *any* advertising or offering for sale of any timeshare debt relief service (not merely *false advertising*)
- referring any Wyndham owner to a third party offering such services
- referring a Wyndham owner to an attorney without advising the attorney of the content of its advertising and the fees charged to the Wyndham owner.
- Representing or stating to Wyndham owners that Defendants have the ability to prevent or repair the entry of derogatory marks on an owner's credit report if

the owner ceases payments on their Wyndham Interest (even if Defendants' representation is true and Defendants do have or do acquire the ability)

These proposed injunctions are improper because they restrict lawful activity, and because they promise to effectively shut down Defendants' business operations entirely.[6] Instead, the conduct deemed admitted by default warrants a more tailored injunction. The preliminary injunction ordered by Judge Scola in the similar *Bluegreen* case is instructive. *See* DE 1055-9. The same attorneys, arguing the same claims, requested that a preliminary injunction be entered as a permanent injunction in *Bluegreen*. *See Bluegreen*, Doc. No. 555 Trial Tr., Vol III 216:18-21) IV, 13:24 - 14:7. The injunction in this case should be similarly limited to unlawful <u>conduct</u> and not impermissibly exceed the relief requested in the complaint.

This Court should credit Pandora's GC Katherine Ferro's testimony and take judicial notice of the *Bluegreen* record, from which it is clear that Pandora no longer includes any of the alleged false representations about the services it provides, including that as soon as the lawyer sends the cease and desist letter "you are out of your

_____

[6] *See Orange Lake Country Club, Inc. v. Castle Law Grp., P.C.*, No. 6:17-cv-1044-Orl-31DCI, 2019 U.S. Dist. LEXIS 152219, at *23-24 (M.D. Fla. Aug. 16, 2019) (denying injunction that would prohibit all communication with timeshare owners, because, instead of being "limited in any way to the allegations of false and misleading advertising upon which plaintiffs based their complaint," it instead "ask[s] the Court to simply prohibit the exit company from conducting business with any of Plaintiffs' clients, regardless of whether or not those clients were induced to retain Resort Relief through the use of false or misleading advertising."); *4245 Corp. v. City of Oakland Park*, 473 So. 2d 12, 13 (Fla. 4th DCA 1985) ("The injunction totally putting the corporation out of business was too drastic and its terms were overbroad. The trial court should have limited the injunction to the illegal acts…and given the corporation an opportunity to function as a legitimate enterprise.").

timeshare"; and that it has a 100% success rate. Pandora has combed its website and other third-party advertisements to remove problematic language, revised its sales scripts and training employee manuals, held employee training, and terminated employees to ensure compliance with Judge Scola's preliminary injunction. *See* H'rg Tr. Vol II at 63:7 – 64:12; *See Bluegreen,* Doc. No. 496-1 (Decl. of Scott Grey) and *Bluegreen,* Doc. No. 554, Trial Tr., Vol. II 96:13-22. In short, Pandora's compliance with Judge Scola's preliminary injunction is undisputed. There is no basis to enjoin more conduct that is beyond the Complaint. Defendants further object to the language in the corrective notice contained in the proposed injunction, which goes beyond "correcting" the false advertising alleged. For example, there are no allegations in the Complaint about Pandora's fees, yet the corrective advertising informs customers of Pandora's fee structure.

### VIII.   It was Error to Find Irreparable Harm
The R&R erred in finding irreparable harm required to order an injunction (R&R at 12). Plaintiffs have failed to show *even one dollar* of damages associated with the breach of "timeshare contracts." Defendants adopt and incorporate Intermarketing's concurrently filed objection regarding this error and prior arguments at DE 936, p.36-37.

### IX.   It was Error to Impose Severe Time Constraints on Evidentiary Hearing and Decline to Continue Hearing

Defendants adopt and incorporate Intermarketing's concurrently filed objection regarding this error. The rigid time limits, combined with the last minute notice of exhibits and witnesses, and the refusal to continue the Hearing resulted in severe prejudice. The two hours also included critical cross examination of Plaintiffs' witnesses on the issues of causation of $33 million in damages, leaving very little time to present its own witnesses. Had more time been allowed, Defendants would have called other witnesses (who did

appear on the Rule 26(a) disclosures) to testify to Defendants' costs and expenses, and to Pandora's changed business practices. Had the exhibits and witness lists been exchanged two weeks prior to the Hearing, as Defendants requested, Dasalla's disclosure would have been addressed and cured in advance.

### X.   The R&R Erred by Determining that the Complaint Sufficiently Stated Claims

Defendants adopt and incorporate Intermarketing's concurrently filed objections regarding this error and prior argument at DE 936, and pp. 8-12.

### XI.   The R&R Erred by Determining that Plaintiffs Have Standing to Pursue All Claims, Including Actual and Disgorgement Damages

Defendants adopt and incorporate Intermarketing's concurrently filed objections regarding this error.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully object to the R&R and request the Court to cure these errors by:

(1) Finding the complaint is insufficient to support damages or injunction;
(2) In the alternative, denying disgorgement award as inappropriate in non-comparative false advertising cases, or alternatively, reducing the recommended disgorgement of gross profits to reflect net profits by consideration of the evidence of record and testimony of Irene Dasalla or other reasonable estimate of true net profits;
(3) Declining to issue injunction due to failure to establish irreparable harm; and
(4) In the altnerative, tailoring the injunction to prohibit only illegal conduct alleged in the Complaint.

Date: October 24, 2023                                        Respectfully submitted,

*/s/ John Y. Benford*
John Y. Benford, Florida Bar: 51950
Wilson Elser Moskowitz Edelman & Dicker LLP
111 North Orange Avenue Suite 1200 Orlando,
Florida 32801 // T: 407.203.7594
john.benford@wilsonelser.com
Attorneys for Pandora Marketing, LLC, William
Wilson, And Rich Folk.

*/s/ Patrick A. Bradford___*
Patrick A. Bradford, (pro hac vice)
Bradford Edwards & Varlack LLP
12 East 49th Street, 11th Floor
New York, NY 10017 // T: 917.671.9406
Email: pbradford@bradfordedwards.com
Attorneys for Defendant William Wilson
and Rich Folk

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 24, 2023, a true and correct copy of the foregoing was furnished via electronic mail using the Court's CM/ECF system which will give notice to all parties registered to receive electronic notice via CM/ECF.

**/s/ John Y. Benford**
John Y. Benford, Esq.