# UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

| | |
|---|---|
| Wyndham Vacation Ownership, Inc. *et al.,* Plaintiffs<br>v.<br>Slattery, Sobel & Decamp, LLP, *et al.,* Defendants | Case No.: 6:19-CV-01908-WWEB-EKJ |

## INTERMARKETING'S OBJECTIONS TO AMENDED REPORT AND RECOMMENDATION OF OCTOBER 10, 2023 [DE 1065]

Intermarketing, by its undersigned counsel, pursuant to Fed.R.Civ.P. Rule 72(a), 28 U.S.C. § 636(b)(1), and L.R. 6.02(a), file this Objection to the Amended Report and Recommendation of the Honorable Judge Embry Kidd [DE 1065] (the "R&R"). Intermarketing adopts and incorporates Pandora Defendants' concurrently filed objections.

**I.    The Award of $16,231,197.88 in Gross Profits is Punitive and not Compensatory in Violation of the Lanham Act.** (Intermarketing adopts and incorporates Pandora Defendants' concurrently filed objections and arguments)

**II.    It was Error to Exclude Ms. Dasalla's Testimony** (Intermarketing adopts and incorporates Pandora Defendants' concurrently filed objections and arguments)

**III.    It was Error to Ignore Evidence of Expenses in the Record**
The R&R further erred by declining to consider evidence before the Court, found in Hearing exhibit MD-63 (updated QuickBooks records) and Defendants' briefing exhibits, DE-936-27 and 936-28 (QuickBooks records). As business records, these QuickBooks records stand on their own and do not require a sponsoring witness. There is no "circumvention" of the Rules of Civil Procedure (*see* R&R at 11, fn. 5) in a Court's consideration of evidence properly before it, even if such evidence is *also* the subject of an excludable witness's testimony.

The evidence submitted by Plaintiffs, upon which the R&R relied to determine gross sales, was admitted without any sponsoring witness. See Hr'g Tr. Vol II at 21-24.

1

Dasalla's testimony was not expert testimony. It was factual testimony about Pandora's internal business expenses, the same as Pandora's and Intermarketing's internal records upon which the court based its determination of $16 million in gross profits. The updated Quickbooks records, Hearing Ex. MD-63, showing an expense margin of 94.73% did not need a sponsoring witness to support them. Ms. Dasalla's direct testimony relating to disgorgement consisted entirely of confirming the accurate entry of financial data and automatic generation of expense and revenue information from QuickBooks. See Hr'g Tr. Vol II at 29-32; 39-40. This was not required for the Court to consider the QuickBooks evidence. Furthermore, the QuickBooks records, already before the court on the briefing record, were submitted with a declaration attesting to their accuracy. See Decl. of Catherine Tan, DE 936-25 at ¶4 and 936-28 (Decl. of Jason Kreik). These records were updated in Hearing Ex. MD-63 pursuant to Plaintiffs' request.

Courts have considered QuickBooks evidence without any sponsoring witness when calculating the required restriction to disgorgement awards to arrive at net profits. *See SEC v. Complete Bus,* 2022 U.S. Dist. LEXIS 194341, at *34-36 (S.D. Fla. Oct. 24, 2022) (relying on "Defendant's profit and loss statement, based in the QuickBooks records, which provides an itemized list of legitimate business expenses," and referencing the exhibit attached to Defendants' responsive briefing on disgorgement, the Court deducted $54 million in legitimate business expenses).

Rule 55 permits a court to conduct a hearing when the record itself does not adequately support damages*. S.E.C. v. Smyth,* 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). The hearing does not replace the record but supplements the record with evidence that is not already before the Court. Particularly in this case, where the damages evidence

2

was voluminous, the damages numbers were massive, and the Court granted only two hours for each side to present its evidence, the Hearing was not intended to replace the 100 pages of briefing and over one 1000 pages of exhibits. Mag. J. Kidd explicitly so stated in advance of the Hearing: "The undersigned cautions the parties that they should rely upon their written submissions to the maximum extent possible and should not view the evidentiary hearing as an opportunity to raise matters that were not addressed in their briefing." DE 1025.

The undersigned and counsel for Pandora Co-Defendants understood that order to mean that the Hearing would supplement the written submissions, and not that all evidence would be offered into evidence in the two hours each party was allotted (which included cross examination and objections). Indeed, it was inconceivable that the 60,000 pages of evidence and over 2500 exhibits would be entered into evidence in a four-hour hearing. However, at the end of the Hearing, Magistrate Judge Kidd indicated that he would consider only evidence admitted at the Hearing. Hr'g Tr. 80:7-23. It was error to ignore evidence already properly before the Court in written submissions, and even more so, where the Court's order in advance of the Hearing encouraged parties to "rely upon their written submissions to the maximum extent possible." DE 1025. In particular, due to the time constraints, Intermarketing was not afforded *any* opportunity to offer testimony to sponsor or support its financial records. It defies logic and equity to discard Defendants' evidence already before the court in the briefing after a minimal "opportunity to be heard," due to a perceived defect in notice of a witness, where the witness's testimony was not required to support the evidence in the record.

Even if Ms. Dasalla's testimony is improperly excluded, at the very least, the Court

should apply the profit margin ascertainable from the QuickBooks records. DE 936-25 and DE 936-27 (Pandora) (as updated in Hearing Ex. MD-63) and 926-28 (Intermarketing). The R&R provides no justification for the exclusion of Intermarketing's Quickbooks records — by no stretch of the imagination can the "taint" of Ms. Dasalla "unnoticed" testimony extend to records that she did not even testify about.

This Court, in fashioning an award in equity, is required to ensure that the award comports with the Lanham Act's directive for a non-excessive, non-punitive award that approximates net profits. This evidence is the only evidence of record from which the Court can make the required adjustment; to exclude the evidence based on an illusory "circumvention" of the Rules of Civil Procedure flies in the face of equity. This Court should apply the 5.27% profit margin evidenced in Ex. MD-63 (updated QuickBooks) to the total sales of $12,348,946.85 ($650,789.50) and a profit margin between 2.1% and 9.1% for Intermarketing evidenced in DE 936-28 to the total sales of $3,882,251.03 (between $81,527.27 and $353,284.84). Accordingly, any combined total disgorgement award should not exceed $1,004,074.34.

**IV.   It was Error to Award Any Disgorgement in Non-Comparative False Advertising Case**

In cases such as this one, where "defendant's profits do not necessarily provide an accurate—or even reasonable—estimate of [plaintiffs'] damages," courts in this Circuit have refused to award disgorgement of defendant's profits. *Slep-Tone Entm't Corp. v. Johnson*, 518 F. App'x 815, 819 (11th Cir. 2013); *see also Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 2018 U.S. Dist. LEXIS 233356, at *27 (S.D. Fla. Jan. 13, 2018) (crediting argument in expert report that disgorgement of profits would be a "significant windfall counter to the principles of equity because those profits do not serve as a rough

4

measure of harm to the Plaintiff and don't bear any relationship to any unjust enrichment to the Defendant"); *St. Charles Mfg. Co. v. Mercer*, 737 F.2d 891, 893 (11th Cir. 1983) (rejecting disgorgement because defendant's profits are only appropriate where sales made to defendants would have been made to plaintiffs); *Tex. Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc*, 951 F.2d 684, 696 (5th Cir. 1992) (finding that awarding defendant's profits in the absence of proof of diverted sales "would be far from equitable—it would be a windfall").

In non-comparative false advertising cases such as this one, where the defendant is accused of advertising a different product than it delivers (but not by comparison to a plaintiff's competing product), the award of defendant's profits similarly violates the Lanham Act's mandate that any award constitute compensation. *See TrafficSchool.com, Inc. v. Edriver Inc.,* 653 F.3d 820, 831 (9th Cir. 2011) (while disgorgement is "appropriate in false *comparative* advertising cases, where it's reasonable to presume that every dollar defendant makes has come directly out of plaintiff's pocket," it is not appropriate in cases where "advertising does not directly compare defendant's and plaintiff's products," because the injury to plaintiff "may be a small fraction of the defendant's sales" and the award would not be compensatory); *see also* 5 McCarthy on Trademarks and Unfair Competition § 30:59 (the logic of defendant's profits compensating plaintiff holds only when parties are competitors such that the defendant's profits are a rough measure of the plaintiff's damages).

Plaintiffs' claimed but unproven loan balance damages (which resulted in $20M *profit* to Wyndham) have no natural correlation to Defendants' profits. Furthermore, additional referenced damages like foreclosure and re-marketing costs, are not

5

quantified, nor substantiated, and also have no relationship to Defendants' profits. Unlike a competing or comparable product or service, Plaintiffs have failed to establish that any monies paid to Defendants (to terminate Plaintiffs' relationship with the unhappy customers) would otherwise have been paid to Plaintiffs, the cornerstone of the damages component of the Lanham Act.

Therefore, any award of disgorgement is inappropriate. The R&R erred in its award of disgorged profits altogether, where there is no correlation between Defendants' profits and any purported (unproved) damage to Plaintiffs. This error is magnified by the excessive nature of the windfall award.

## V. It was Error to award an Amount Grossly Disproportionate to Harm

The R&R also erred because the disgorgement amount recommended in the R&R, Defendant's entire gross profits of $16.2 million, is so radically disproportionate to the purported harm that it violates the equitable and non-excessive mandate of §1117(a). Calculation of disgorgement "should not produce … a gross disconnect between harm and recovery." *KEG Techs., Inc. v. Laimer*, 436 F. Supp. 2d 1364, 1373 (N.D. Ga. 2006) (reducing disgorgement amount because it was a "windfall…in contravention of the Lanham Act's mandate that any monetary award 'constitute compensation and not a penalty'"). "[A] finding of actual damage is still an important factor in a court's equitable determination of whether profits should be awarded and the court need not compensate plaintiff with defendant's profits in such a situation." 3 Gilson on Trademarks § 14.03. As noted in the R&R, Plaintiffs' evidence of any actual damages "is deficient," R&R at 6, and "merely circumstantial at best." *Id.* at 7. In other words, Plaintiffs have proven *zero* damages. Moreover, even had Plaintiffs adequately proven that any single owner stopped

6

paying because of Defendants' alleged conduct, Defendants have shown that Plaintiffs suffered zero harm from such non-payment. To the contrary, Plaintiffs' own 1099-A records, as reported to the I.R.S., document Plaintiffs' reacquisition of timeshare interests as produced a **net profit of nearly $20 million dollars, not a loss.** See MD-40R and MD-58R, tallying the amounts reported in 1099-A forms. Whether Plaintiffs' reported "harm" was $0 or nearly $20 million *profit*, a disgorgement award of $16.2 million is a prohibited windfall under the Lanham Act.

Purported harms other than the unpaid loan balances (residual interests, remarketing and carrying costs) were never even attempted to be quantified. These harms in any event amount to an insignificant loss, disproportionate to the staggering $16.2 million the R&R recommended.

Finally, the record, based on Plaintiffs' admissions and algorithm, shows that 370 loans were acquired only after the initial complaint was filed (and 270 of those after the amended complaint was filed). *See* DE 1055, Exh. 1-A and 1-B. Defendants' sales associated with these loans should in any event be discounted, because they were not sales that could have infringed on Plaintiffs' rights.

## VI.     Error to Award Disgorgement When Wyndham Acted Inequitably

Owners would never have sought Defendants help but for Wyndham's lies, deceit and fraudulent sales practices. See DE 944 at 233:19 – 235:14 (Trial Tr. Vol IV at 755:19 – 757:14). This fact alone led J. Scola in the *Bluegreen* case to question the equity of awarding Bluegreen any disgorgement. See *Bluegreen,* Doc. No. 556 Trial Tr., Vol. IV, 13:24 - 14:7. Following J. Scola's logic, equity would support $0 damages even in cases where a violation of the Lanham Act is found. See, *e.g. Victorinox AG v. B&F Sys.*, Inc.,

7

705 Fed App'x 44, 50 n. 5 (2d Cir. 2017); *Trafficschool.com, Inc. v. Edriver, Inc.,* 633 F. Supp. 2d 1063, 1087 (C.D. Cal. 2008*),* citing *George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1540-41 (2d Cir. 1992); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 2023 WL 2652855, at *3 (C.D. Cal. Mar. 13, 2023) ("The jury found that Plaintiffs had proven all elements necessary to find that Defendants had engaged in false advertising in violation of the Lanham Act… But the jury also awarded $0 for Plaintiffs' actual damages and $0 for Defendants' profits attributable to the false advertising.").

**VII.  It was Error to Issue an Overbroad Injunction** (Intermarketing adopts and incorporates Pandora Defendants' concurrently filed objections and arguments)

**VIII.  Error to Find Irreparable Harm**

The R&R erred in finding irreparable harm required to order an injunction, finding irreparable harm by "using false and misleading advertising, and charging fees, to entice Wyndham Owners into wrongfully breaching their timeshare contracts." (R&R at 12) Plaintiffs have failed to document *even one dollar* of damages associated with the breach of "timeshare contracts." Plaintiffs did not have paying contracts with any owners at the time owners stopped paying; rather, non-plaintiffs Wyndham Consumer Finance and certain still unidentified SPEs owned the loans and did not receive expected payments. Regarding prospective harm to Plaintiffs, that too is speculative and unknown. Plaintiffs' non-recourse sales of all loans to third parties means that any forthcoming harm to them will depend upon a series of actions that are too indefinite for this Court to conclude they are inevitable and which require Plaintiffs to voluntarily repurchase those future, unknown, non-performing loans from future, unknown entities. The claimed injury is also reparable because Plaintiffs can, and do, resell the collateral or simply not repurchase defaulted loans. Is this mitigation which precludes recovery?

Furthermore, the R&R did not consider, as it must, whether monetary damages are adequate to compensate Plaintiff. *Johnson & Johnson v. XS Supply, LLC*, No. 8:19-cv-1673-AEP, 2022 U.S. Dist. LEXIS 136144, at *41-42 (M.D. Fla. Aug. 1, 2022). The disgorgement award recommended more than compensates Plaintiff.

Finally, Plaintiffs' complaints are disingenuous and fail to sufficiently establish ownership of the loans at the time of alleged harm, a necessary prerequisite to the equitable remedy they request because they cannot request an injunction to prevent harms they did not allege.

## IX.   It was Error to Impose Severe Time Constraints on Evidentiary Hearing and Decline to Continue Hearing

Notice of the August 9, 2023 Hearing was given on July 27, 2023, with each side limited to 90 minutes. DE 1021. Defendants requested a continuance, due to two other trials scheduled for August, and their limited resources to adequately prepare for both trials and the Hearing, which would address the issues and evidence argued in over 1300 pages of briefing. DE 1023 (enumerating some of the complex issues to be addressed at the Hearing). Defendants also requested a full day for the Hearing because the time allotted would be patently insufficient. *Id.* The Court denied the motion for continuance, and only slightly increased the amount of time for each side to two hours, where the time would "count against the side speaking/questioning at any given moment." DE 1025. The Court further cautioned that the parties "should rely upon their written submissions to the maximum extent possible and should not view the evidentiary hearing as an opportunity to raise matters that were not addressed in their briefing." *Id.*

9

Upon learning of Plaintiffs' intention to produce over 2500 records amounting to more than 60,000 pages in length, DE 1026, only one day before the Hearing, Defenants renewed their motion for a continuance, DE 1027, explaining the prejudice in preparing for a hearing one day after a massive document dump. Defendants further requested that the parties be required to exchange exhibits two weeks before the Hearing, instead of one day before the Hearing, and that more time be allotted each side to present its evidence. The Court denied the request to continue, did not alter the schedule for exchange of exhibit lists and witness lists, and did not allot any more time for the Hearing. DE 1028. The notice and time constraints did not satisfy Defendants' due process rights to a substantive hearing to determine damages and injunctive relief in this action, where $50 million and Defendants' entire business were on the line.

These rigid time limits — disfavored by Courts[1] — combined with the last minute production of exhibits and notice of witnesses, and the refusal to continue the Hearing resulted in severe prejudice. Because a small trial team, already spread thin with two other trials scheduled that month, were forced to reduce many complex issues to a two-hour allotment, Defendants did not have the ability to fully present their case. The two hours also included critical cross examination of Plaintiffs' witnesses on the issues of causation of $33 Million in damages, leaving very little time to present its own witnesses.

---

[1] *Johnson v. Ashby*, 808 F.2d 676, 678 (8th Cir. 1987) ("it may be an abuse of the trial court's discretion to exclude probative, non-cumulative evidence simply because its introduction will cause delay, and any time limits formulated in advance of trial must be fashioned with this in mind."); *McKnight v. GMC,* 908 F.2d 104, 114-15 (7th Cir. 1990) (arbitrary time limitations with "hourglass method" of enforcement was "potentially [ ] grave" error.)

10

Had more time been allowed, Defendants would have called other witnesses (who did appear on the Rule 26(a) disclosures) to testify to Defendants' costs and expenses, and to Pandora's changed business practices. Intermarketing was severly prejudiced as it had no time to call its own witnesses to testify as to costs, or to explain the variance between the 2.1% and 9.1% profit margins in DE 936-28.

Furthermore, the exchange of exhibits and witness lists a day prior to the Hearing did not give either party sufficient notice to prepare. Had the information been exchanged two weeks prior to the Hearing, as Defendants requested, the issue of Ms. Dasalla's disclosure would have been addressed and cured prior to the Hearing.

Refusal to continue the Hearing and order exchange of materials in advance, along with rigid time limits that could not accommodate the quantum of evidence, severly preudiced Defendants, denying them the requisite due process and meaningtful opportunity to be heard. *SEC v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005) ("Basic notions of due process underpin this requirement" for a Rule 55 hearing), citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("the fundamental requisite of due process of law is the opportunity to be heard").

X. **The R&R Erred by Determining that the Complaint Sufficiently Stated Claims.**

The R&R correctly noted that the Court must review whether Plaintiffs state a claim for which they are entitled to relief, but erred in its determination that the issue was previously determined in the Court's earlier order denying Defendants' motion to dismiss and need not be revisited (DE 488). (R&R, p.4, lines 5-9).

It was error to rely on findings in a July 6, 2021 order denying a motion to dismiss That order issued *years* prior to Plaintiffs' ultimate disclosures of non-ownership of the

11

loans at the time of injury and assignments —the entire basis of their damage claims, which *were **not*** pled in the Complaint. Because this issue was not before the Court when the Court issued DE 488, the Court must reevaluate, in light of new disclosures which lay bare the falsity of allegations in the Complaint, whether the Complaint, as filed, pleads sufficient facts to support the claims. See *White CAP, L.P. v. Mowers,* 2021 U.S. Dist. LEXIS 150585, at *7-8 (N.D. Ga. Aug. 11, 2021) (evaluating sufficiency of complaint, despite earlier motion to dismiss because earlier determination did not amount to a conclusion that the complaint "alleged every element of every claim," as some aspects were not then challenged.) Had the Court conducted this required analysis, it would have been clear that the Complaint on its face was insufficient to support all the claims alleged, including the Lanham Act claim.

Plaintiffs' failure to allege the basis of their entitlement to bring the causes of action — the assignment of all loans — is fatal to the Complaint. A defaulted defendant cannot be held liable for allegations not contained in the complaint. Wyndham's un-pled allegations of repurchase of the loans, set forth in DE 936 at 9-11, are an unauthorized amendment of the Complaint in violation of *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312 (11th Cir. 2004). Intermarketing adopts and incorporates prior argument and case law at DE 936, pp. 9-11.

Plaintiffs alleged in the amended complaint that they suffered a **direct** injury by virtue of their supposed ownership of the loans **at the time of alleged harm**, when the owners ceased payment and allegedly breached their contracts (DE 36 ¶170, 174, 199, 201, 202, 205, 218, 232, 247), but this was false. In fact, **all** loan contracts upon which they sued were sold to non-plaintiff third parties, who owned them at the time of default,

*See* Trial Tr. DE 939, 245:4-10 and 247:9-17 This dooms Plaintiffs' case because "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54 and in the amended complaint, Plaintiffs: (i) do not assert any claims for damages incurred by non-Plaintiff third parties, (ii) do not say that they purchased rights to sue Defendants by assignment, and (iii) do not allege that any causes of action have been assigned to Plaintiffs. And, even if the Plaintiffs' **false** allegations in their complaint facially stated a claim, those allegations "cannot sustain a default judgment where they are contrary to facts of which the court will take judicial notice…or are contrary to uncontroverted material in the file of the case." *Escalante v. Lidge,* 34 F.4th 486, 492-95 (5th Cir. 2022). Thus, because Plaintiffs admitted that the 934 loans in their damages model were acquired from others after the alleged unlawful conduct, they fall squarely **outside of the allegations of the amended Complaint** and cannot, as a matter of law, support Plaintiffs' claim for damages, under the Lanham Act or otherwise.[2]

In addition, the R&R erred by failing to address Defendants' position, argued at DE

---

[2] *Lary,* 780 F.3d at 1106; *Bautista*, 2015 U.S. Dist. LEXIS 149670 at *5 n.3; *see generally Fagan v. Cent. Bank of Cyprus*, 2021 U.S. Dist. LEXIS 121603 (S.D. Fla. June 28, 2021) (painstakingly reviewing the complaint and only awarding what was unequivocally established by default).This Court has incorrectly noted that ownership of loans by special purpose entities SPEs is not fatal to the Plaintiffs' case. DE 1034 at 8. The court incorrectly assumed that SPEs are identical. However, SPEs vary greatly in form and operation greatly. See, e.g., Bank for International Settlements (BIS): https://www.bis.org/publ/joint23.pdf ("SPEs are used for a variety of business purposes, …These business purposes are not necessarily mutually exclusive and several of these objectives may be achieved in a single structure.") Because Plaintiffs failed to disclose the existence of SPEs in the Complaint, only doing so after discovery was closed, in DE 822, Defendants had no opportunity to take discovery of the SPEs. This due process violation is precisely why the law requires disclosure in a complaint when suing on the rights of others.

13

936 pp. 11-12, that the allegations in the Complaint do not establish Lanham Act standing, a challenge not raised or addressed in the Court's previous order DE 488.

## XI. The R&R Erred by Determining that Plaintiffs Have Standing to Pursue All Claims, Including Actual and Disgorgement Damages

Defendants object to the finding of the R&R, referring to the Court's prior finding against the Lawyer Defendants (DE 1034 at 8-9) that Plaintiffs have standing to pursue their claims. There, the Court found that despite evidence Plaintiffs did not own the loans, ownership of the loans was not required to establish an actual controversy, because "the timeshare owners' beef was with Plaintiffs, [and] Marketing Defendants focused their false advertising on Plaintiffs. Although the loans were securitized, Plaintiffs continued to service the timeshares themselves and kept in contact with the timeshare owners." *Id.* at 9.

The Court failed to apply the correct standard for determining standing, merely stating that an "actual controversy" exists, without evaluating whether Plaintiffs have shown an "injury in fact," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), that was "suffered by the plaintiff." *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 103 (1998). In support of its finding, the Court noted that the loans were securitized and sold to third parties, but the timeshare ownerships were not securitized. DE 1034 at 9, fn.1. Timeshare contracts untethered to any economic gain, after all proceeds on the associated loan contracts were sold to a bankruptcy remote third party, (and Wyndham was advanced the consideration from investors), cannot support "injury in fact." Just because Wyndham had an ongoing obligation to provide lodging to owners under the timeshare contracts (for which Wyndham had already been compensated by proceeds received from the investors in securitization), does not create an injury in fact to Plaintiffs. Further, the court made no

14

finding that the purported non-oral, non-written, alleged assignments, in fact, transferred the causes of action asserted in this suit back to Plaintiffs. Defendants object to any such finding implicit in the Court's and the R&R's findings, as the self-serving claim of valid assignments of loans, along with all causes of action, is unsupported by any corroborating testimony or other documentary evidence.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully objects to the R&R and requests the Court to cure these errors by

(1) Finding the complaint is insufficient to support damages or injunction;

(2) In the alternative, denying disgorgement award entirely as inappropriate in non-comparative false advertising cases, or alternatively, reducing the recommended disgorgement of gross profits to reflect net profits by consideration of the evidence of record and testimony of Irene Dasalla or other reasonable estimate of true net profits;

(3) Declining to issue injunction due to failure to establish irreparable harm; and

(4) In the altnerative, tailoring the injunction to prohibit only illegal conduct alleged in the Complaint and established by sustainable evidence..

Date: October 24, 2023   Respectfully submitted,
  ***/s/ David A. Klein***
  David A. Klein
  Law Offices of David Alan Klein  P.C.
  1940 Route 70 East, Suite 4
  Cherry Hill, NJ 08003
  Tel: (856) 428-3383
  Lawofficesdakpc@aol.com
  *Attorneys for Defendant Intermarketing Media, LLC.*

15

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 24, 2023, a true and correct copy of the foregoing was furnished via electronic mail using the Court's CM/ECF system which will give notice to all parties registered to receive electronic notice via CM/ECF.

**/s/ David A. Klein**

David A. Klein, Esquire.